OPINION OF THE COURT
 

 Smith, J.
 

 The primary issue here is whether an attorney’s state
 
 *721
 
 ment, incriminating his client in the murder of his wife and constituting the principal evidence against the defendant, was properly admitted into evidence. We conclude that it was not and we reverse.
 

 Defendant was charged and convicted of firing four bullets into the back of the head and neck of his wife, Jan Cassas, at their Brooklyn home in the early morning hours of June 25, 1987. Jan Cassas died as a result of her wounds.
 

 Defendant and his then-attorney Samuel Hirsch on that same morning went to the police precinct nearest Hirsch’s home and were directed to the precinct nearest defendant’s home. At the second precinct, the attorney identified himself as a lawyer and inquired whether there had been any reported homicides or attempted homicides within the past 24 hours. Hirsch informed the desk sergeant that there was a problem at defendant’s home and that a prompt police response was necessary. The attorney accompanied the police to defendant’s home where the police found Jan Cassas dead in the master bedroom. The attorney then returned to the precinct where defendant was waiting.
 

 There is evidence in the record that at the precinct, with defendant standing next to him, attorney Hirsch stated, "I brought my client in to surrender. I believe he shot his wife. You’ll find the gun in the room. It will have my client’s prints on it.” The police arrested defendant. Later that day, the police returned to defendant’s home and recovered a loaded gun from the master bedroom where Mrs. Cassas’ body was found. A second gun allegedly used in the killing was apparently never found.
 

 Supreme Court denied defendant’s motion to suppress the statements made by his attorney, finding that at the time the statements were made, Mr. Hirsch, as defendant’s attorney, was his agent, authorized to speak about the subject matter within the scope of the parties’ agency relationship. Therefore, the statement was binding on the defendant. The Appellate Division affirmed. It concluded that the statement, admitted through the testimony of a detective, was direct evidence of guilt from a person acting as defendant’s agent.
 

 I.
 

 It is well settled that statements made by an attorney concerning a matter within his employment may be admissi
 
 *722
 
 ble against the party retaining the attorney
 
 (People v Rivera,
 
 58 AD2d 147, 149,
 
 affd on opn below
 
 45 NY2d 989;
 
 United States v Margiotta,
 
 662 F2d 131, 142,
 
 after retrial
 
 688 F2d 108,
 
 cert denied
 
 461 US 913). In this case, however, we conclude that the oral assertions of defendant’s attorney, introduced in the People’s case-in-chief, were inadmissible. There was no evidence that the statement had been authorized by the defendant as a waiver of the attorney-client privilege. This is particularly important in criminal cases where a defendant retains the authority to make key choices about a defense against criminal charges.
 

 In
 
 People v Rivera
 
 (58 AD2d 147,
 
 affd on opn below
 
 45 NY2d 989,
 
 supra)
 
 this Court affirmed an order of the lower court which admitted an attorney’s statement against a client. The statement in
 
 Rivera (supra)
 
 was used only for impeachment of the defendant after he testified to a different version of events from the one contained in a written affidavit that had been submitted by the attorney to the court in the course of the same action. The affidavit of the attorney, interposed on a motion, specifically indicated that the attorney had spoken to his client, the defendant, who admitted that he had a marked $20 bill in his pocket, but had obtained it not from selling drugs but from giving change to a person who was involved in a drug transaction. At the trial the defendant denied any involvement in the drug transaction and denied being in possession of the $20 bill. In upholding the use of the attorney’s affidavit for impeachment purposes, the Appellate Division ruled that "the attorney was plainly acting within the scope of his authority, and probably with express authority, in making and filing the affidavit” (58 AD2d, at 149).
 

 The facts, procedural setting and affirmative use of the challenged evidence in this case are, however, distinguishable from
 
 Rivera.
 
 Here, the attorney’s statement was oral and made out of court, to a third party. Moreover, there is nothing to suggest the attorney had authority to speak on behalf of his client. There was testimony from the attorney at the hearing that contradicted even the making of the statement. Further, the statement here was used in the prosecution’s case-in-chief against the defendant, as contrasted to
 
 Rivera,
 
 where the attorney explicitly stated that the defendant had informed him of the facts which were contained in a written affidavit, filed in open court, and used for impeachment purposes.
 

 United States v McKeon
 
 (738 F2d 26) is not authority to the
 
 *723
 
 contrary. Although ultimately admitting the attorney’s initial opening statement to the jury against the defendant client in a retrial against the defendant client, the court satisfied itself that the defendant’s prior argument involved assertions of fact inconsistent with similar assertions in the subsequent trial. The court also noted that the inconsistency was clear and of the quality which obviated any need for the trier of fact to explore other events at the prior trial. Additionally, the statements of counsel were deemed the equivalent of testimonial statements by the defendant, and the inference the prosecution was seeking to draw from the inconsistency was a fair one, that an honest explanation for the inconsistency did not exist.
 
 (McKeon, supra,
 
 at 32.)
 

 In
 
 United States v Valencia
 
 (826 F2d 169) the Second Circuit held that statements made by defense counsel during the course of bail negotiations with the prosecution were not admissible against the defendant as a false exculpatory statement and an admission of a party-opponent under the agency exceptions to the hearsay rule. (Fed Rules Evid, rule 801 [d] [2] [C], [D].) The court stated that the attorney’s statements "may not be directly attributed to the defendant” and that its use would be "contrary to the attorney-client privilege” (826 F2d, at 171). "To rule as the government asks,” the court cautioned, "would set a dangerous precedent for the admission of all informal, out-of-court statements by attorneys against their clients.”
 
 (Valencia, supra,
 
 at 171.)
 

 Significantly and key to the disposition of the instant case, the admissions would violate the attorney-client privilege because there is no evidentiary record support for a finding of waiver of the privilege by defendant. The attorney-client privilege "exists to ensure that one seeking legal advice will be able to confide fully and freely in his [or her] attorney, secure in the knowledge that his [or her] confidences will not later be exposed to public view to his [or her] embarrassment or legal detriment.”
 
 (Matter of Priest v Hennessy,
 
 51 NY2d 62, 67-68.) Further, in
 
 People v White
 
 (73 NY2d 468, 478) this Court held that "[a] defendant having accepted the assistance of counsel, retains authority * * * over certain fundamental decisions regarding the case (i.e., whether to plead guilty, waive a jury trial, testify in his or her own behalf or take an appeal * * *)”
 
 (see also, Jones v Barnes,
 
 463 US 745, 751, where the United States Supreme Court held that an "accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty,
 
 *724
 
 waive a jury, testify in his or her own behalf, or take an appeal”).
 

 The fact that the attorney is the agent of the client-principal does not alone equate to a waiver of this privilege. The specific authorization must come from defendant principal to attorney-agent to constitute a waiver of the attorney-client privilege. Mr. Hirsch was not called as a witness at trial, and no evidence was presented as to the full and detailed scope of the parties’ relationship in the relevant context of the issue at hand.
 

 II.
 

 Additionally, the court improperly refused to instruct the jury that no adverse inference could be drawn from defendant’s silence at the time of the attorney’s assertions to the police at the precinct. Although this case does not implicate a defendant’s absolute right to remain silent in the face of accusatory statements or questions by law enforcement officials
 
 (see, Doyle v Ohio,
 
 426 US 610, 619;
 
 People v Conyers,
 
 52 NY2d 454, 457;
 
 People v De George,
 
 73 NY2d 614, 618), defendant was nonetheless entitled to a cautionary instruction under the circumstances presented.
 

 Although neither defendant nor his attorney testified at trial, the trial court nevertheless was aware from the hearing testimony that defendant’s silence was at the instruction of his attorney. Although the proposition that defendant had adopted by silence his attorney’s admission was not explicitly put before the jury
 
 (cf., People v Conrow,
 
 200 NY 356), the jury nevertheless heard testimony from which it could have inferred that defendant’s silence was an adoption or corroboration of his attorney’s assertions about him. Thus, we conclude that the trial court was required to guard against the adverse inference that silence might be used as evidence against the defendant and to give á curative instruction.
 

 Accordingly, the order of the Appellate Division should be reversed, defendant’s motion to suppress granted and a new trial ordered.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Levine and Ciparick concur.
 

 Order reversed, etc.