■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH GOLDSTEIN, Appellant. [857 NYS2d 817]—

Rose, J. Appeal from a judgment of the County Court of Sullivan County (Ledina, J.), rendered April 13, 2007, convicting defendant upon his plea of guilty of the crimes of reckless endangerment in the first degree (two counts) and aggravated unlicensed operation of a motor vehicle in the first degree.

At a time when his driver's license was suspended and had been previously suspended more than 20 times, defendant was pulled over by police for failing to stop at a stop sign. When the officer asked to see his license, defendant took flight and drove away, allegedly reaching speeds of 70 to 80 miles per hour while the officer gave chase. When defendant sped through a one-lane construction zone, two flag people had to jump out of the way to avoid being struck. Defendant was ultimately apprehended and later charged in a 23-count indictment that included two counts of reckless endangerment in the first degree (counts 1 and 2), one count of aggravated unlicensed operation of a motor vehicle in the first degree (count 3), two misdemeanor counts of reckless driving and 18 separate additional violations of the Vehicle and Traffic Law.

Defendant agreed to the terms of a plea bargain in which he would plead guilty to the three felony counts of the indictment in satisfaction of all 23 charges, waive his right to appeal and, as a second felony offender, receive sentences of 3½ to 7 years

on counts 1 and 2, and $1^1/_3$ to 4 years on count 3. Although these were the maximum sentences for each of these three charges, defendant bargained for the benefit of running them concurrently. Before defendant pleaded guilty, County Court advised him that the sentence for each of those counts could be imposed consecutively and, when setting bail, warned him that his failure to appear at sentencing would result in loss of the bargained-for concurrent sentences. Defendant later moved to withdraw his plea, but County Court denied his motion without a hearing. Thereafter, defendant twice failed to appear for sentencing. Ultimately, County Court sentenced him to prison terms as had been agreed, except that the term for count 3 was made consecutive to the other two concurrent terms.

Defendant now appeals, contending that County Court should have granted his motion to withdraw his guilty plea because his plea was not voluntary. Specifically, he argues that his allocution failed to establish the element of depraved indifference as to the reckless endangerment counts, he was coerced by the court's statement that he could receive consecutive sentences if convicted after a trial and his counsel was ineffective in advising him to accept the proposed plea bargain, including the stipulated sentence. Upon our review of the record, however, we find that the plea as rendered was voluntarily and knowingly given and was accepted by County Court only after it had been established that defendant, with the benefit of counsel, had a full and complete understanding of the plea's impact and had made a knowing and intelligent waiver of his rights.

As for the element of depraved indifference (*see* Penal Law § 120.25), defendant specifically admitted that he was operating a large sport utility vehicle at a high rate of speed through a highway construction zone where he knew there were workers and flag people directing traffic. His professed inability to recall at the time of his plea that they had been placed in grave danger does not render his guilty plea invalid. Nor do we read defendant's answer to County Court's inquiry to be a denial that he knew that he had actually endangered the workers' lives. Since as he was asked instead whether he could have killed one of the workers if he had hit the worker and he ultimately answered, "I don't know," his equivocation sheds no light on what risks he perceived and yet disregarded when he sped through the construction zone. In any event, his comment does not suggest that his reckless conduct resulted from a preoccupation with his own problems rather than an utter lack of regard for the lives of others (*compare People v Feingold*, 7 NY3d 288, 295 [2006]). What he did admit—and what his

counsel expressly stated on his behalf and in his presence— establishes that he was well aware of the nature of the charges pending against him and, after consultation with counsel, was prepared to admit his guilt. He acknowledged that he had been charged by indictment with fleeing from the police at high speed through the construction zone, failing to comply with the directions of flag people and putting these workers at grave risk of death. When counsel, rather than defendant, stated in response to County Court's question that defendant did not dispute the allegation that he drove "so close [to the workers] that [he] created a situation that was very dangerous," defendant did not deny it. Nor did defendant do anything to repudiate counsel's further statement that "we don't dispute the allegations and I have had an opportunity to review the allegations, as well as the statement with my client, and we don't dispute the voracity [*sic*] of the situation." From the context which these statements were made, we must conclude by his silence that defendant adopted them and made them his own for purposes of his plea (*see People v Hadden*, 158 AD2d 856, 857 [1990], *lv denied* 76 NY2d 847 [1990]; *see also People v Brown*, 98 NY2d 226, 233 [2002]; *People v Cassas*, 84 NY2d 718 [1995]).

Further, defendant, at the time of his plea, was a 30-year-old college student who had extensive prior contacts with the criminal justice system. Given this, together with his awareness of the nature of the charges, his admissions, his professed inability to recall and his failure to contradict his counsel's statements, defendant's allocution cannot be said to cast doubt upon the culpable mental state of utter disregard for the lives of others that is inferable from these circumstances (*see People v Glanda*, 18 AD3d 956, 958-959 [2005], *lv denied* 6 NY3d 754 [2005]; *see generally People v Feingold*, 7 NY3d at 296). Thus, defendant's statements given at the time of his guilty plea did not effectively negate an essential element of the crime to which he pleaded (*cf. People v Ramirez*, 42 AD3d 671, 672 [2007]). Even if defendant's allocution were deemed factually insufficient, a challenge on that basis is precluded by his waiver of the right to appeal (*see People v Jackson*, 39 AD3d 1089, 1090 [2007], *lv denied* 9 NY3d 845 [2007]).

We also are unpersuaded by defendant's argument that he was misinformed that consecutive sentences could be imposed for his crimes. The indictment alleged that defendant endangered two different flag people. While the record does not disclose the length of the construction zone, neither did defendant dispute the prosecutor's assertion in response to his motion to vacate his plea that the flag people were at opposite ends of the

zone. Rather, defendant contended only that his driving through the zone constituted a single act. Inasmuch as the People advanced facts supporting a view that defendant's driving was at a different time and place as to each victim, they satisfied their obligation to show that he endangered the flag people by separate, successive and distinct acts for which consecutive sentences could be imposed (*see People v Ramirez*, 89 NY2d 444, 451 [1996]; *People v De Maio*, 304 AD2d 988, 988 [2003]). Also unavailing is defendant's suggestion that he was misinformed by County Court's incorrect statement of the range of years in prison that he could be sentenced if convicted after trial, for the court made that statement after, rather than before, he entered his guilty plea. Thus, County Court's and counsel's references to potential consecutive sentences were not misleading and defendant's plea was not thereby coerced.

Next, there is no merit in defendant's contention that County Court erred in imposing a consecutive sentence for his aggravated unlicensed operation conviction. That charge and the reckless endangerment charges were based upon "separate and distinct acts involving different kinds of conduct, as alleged in the separate counts of the indictment, even though they evolved from the same operation of a motor vehicle" (*People v Richburg*, 287 AD2d 790, 792 [2001], *lv denied* 97 NY2d 687 [2001]; *see People v Brown*, 80 NY2d 361, 364 [1992]). Specifically, defendant was driving his vehicle on a public highway without a driver's license before he was stopped by police, and his subsequent flight through the construction zone was a separate and distinct act.

Nor did County Court err in rejecting defendant's conclusory excuse for his violation of the *Parker* warnings without first conducting a full evidentiary hearing (*see People v Outley*, 80 NY2d 702, 714 [1993]). The court noted that defendant had not appeared on two prior occasions and afforded him an adequate opportunity to explain his absences. Defendant alleged only that treatment for psychological distress, apparently due to anxiety resulting from his impending sentencing, had prevented his appearance at one of the scheduled sentencing dates, yet he offered no specifics or documentation to support his claim.

Finally, defendant's challenge to the severity of his sentence is foreclosed by his waiver of the right to appeal and the record does not support his claim that his counsel was ineffective in advising him to accept a plea agreement that satisfied additional charges and avoided consecutive sentences.

Peters and Kavanagh, JJ., concur.

Lahtinen, J. (dissenting). We respectfully dissent. We would

reverse the judgment of conviction, grant defendant's motion to withdraw the plea and remit for further proceedings on the indictment. The plea agreement provided for defendant to receive the maximum sentence on the top charges against him. He made a timely and detailed motion to withdraw his plea in which he asserted that he had made statements during the plea allocution that negated an essential element of the crime of reckless endangerment in the first degree, he had been coerced to accept the plea by the statement by County Court (LaBuda, J.) that he could receive consecutive sentences on all counts if convicted after a trial, and he was innocent of the depraved indifference conduct undergirding the crime of reckless endangerment in the first degree. The motion was considered by a different judge than the one who took the plea,[1] and denied without a hearing. This appeal ensued.

"As defendant's challenge implicates the voluntariness of his plea, it survives his waiver of appeal and it is preserved by his motion to withdraw his plea" (*People v Wyant*, 47 AD3d 1068, 1069 [2008] [citations omitted]; *see People v Pace*, 284 AD2d 806, 806-807 [2001], *lv denied* 97 NY2d 686 [2001]). While there is no uniform catechism for taking a plea, if defendant said or failed to say something in his allocution that negated an element of the crime or otherwise called into doubt his guilt or the voluntariness of his plea, then County Court was required to conduct further inquiry (*see People v Seeber*, 4 NY3d 780, 781 [2005]; *People v Wyant*, 47 AD3d at 1069; *People v Ramirez*, 42 AD3d 671, 672 [2007]). The top two counts to which defendant pleaded include an element of depraved indifference. Approximately a month before defendant pleaded guilty to those counts, the Court of Appeals made clear that the element of "depraved indifference to human life is a culpable mental state" (*People v Feingold*, 7 NY3d 288, 294 [2006]) and implicitly overruled "those depraved indifference reckless endangerment cases that rest on the premise that depraved indifference is measured not by a culpable mental state but by an objective assessment of the risk involved" (*id.* at 294 n 2; *see generally People v Baptiste*, 51 AD3d 184 [2008]).

The Court of Appeals instructed that even where a "defendant might well be said to have acted with the mens rea of depraved indifference had the factfinder simply announced a

---

**1.** It merits noting that the discretion accorded trial judges in deciding motions to withdraw pleas is premised in part upon (unlike here) having presided over the plea and thus being "best able to determine whether a plea is entered voluntarily, knowingly and intelligently" (*People v Alexander*, 97 NY2d 482, 485 [2002]).

guilty verdict[,] . . . [w]hen a jury (or . . . the court at a bench trial) pointedly says that [the] defendant was not depravedly indifferent, it is not our place to say that he was" (*People v Feingold*, 7 NY3d at 295). In other words, even where the defendant engages in conduct that would support an inference of the requisite mental state—as, for example, when "a large number of people were endangered" due to a defendant's actions (*id.*)—a conviction of depraved indifference murder cannot be upheld when the factfinder has expressly addressed the defendant's culpable mental state and pronounced the defendant to be innocent of "the core criminal element, depraved indifference" (*id.*). Thus, in *Feingold*, the Court reduced the defendant's conviction of reckless endangerment in the first degree to reckless endangerment in the second degree when the factfinder indicated that the defendant "committed an extremely reckless and foolish act not because of his lack of regard for the lives of others but because of his focus upon his troubles and himself. While being reckless, the defendant's state of mind was not one of extreme wickedness, or abject moral deficiency, or a mischievous disregard for the near certain consequences of his irresponsible act" (*id.* [internal quotation marks omitted]), as required to establish a mens rea of depraved indifference.

Here, the plea allocution reveals significant doubt that defendant acted with the requisite culpable mental state to commit reckless endangerment in the first degree. The allocution provided in relevant part:

"THE COURT: And did you ignore the traffic directions and cause one of the construction workers to jump out of the way to avoid being hit by your car? . . .

"THE DEFENDANT: I don't know if he jumped out, your honor. I know I went by.

"THE COURT: Very close. You could have killed him if you hit him?

"THE DEFENDANT: I don't think so. I don't know.

"THE COURT: You didn't kill him, of course. But, you came so close that you created a situation that was very dangerous.

"[DEFENSE COUNSEL]: Your honor, we don't dispute the allegation. My client has no recollection of particular individuals. But, we don't dispute the allegations and I have had an opportunity to review the allegations, as well as the statement with my client, and we don't dispute the voracity [*sic*] of the situation."

County Court (LaBuda, J.) did not inquire whether defendant agreed with counsel's statement or otherwise seek clarification from defendant. Although we agree with the majority that

counsel's comment could have been sufficient had this been a situation where defendant was pleading to a lesser or hypothetical crime (*see People v Hadden*, 158 AD2d 856, 857 [1990], *lv denied* 76 NY2d 847 [1990] [cited by the majority]; *see also People v Matthie*, 34 AD3d 987, 989-990 [2006], *lvs denied* 8 NY3d 805, 847 [2007]), defendant was pleading to the top counts, he had just cast doubt on his culpability to those counts and, at a minimum, the court should have elicited from defendant a "positive confirmation of his lawyer's exposition" (*People v Nixon*, 21 NY2d 338, 350 [1967]).[2] In our view, regardless of whether the allocution revealed *conduct* that would permit an inference of depraved indifference (*see People v Suarez*, 6 NY3d 202, 214 [2005]), defendant's answers negated (or at least cast serious doubt upon whether he possessed) the necessary culpable *mental state* of depraved indifference when he drove his vehicle through the construction zone. Contrary to the conclusion of the majority, defendant *did* deny that he knew that he had actually endangered the workers' lives, stating, "I don't think so . . . I don't know," in response to the court's question regarding whether he could have killed one of the workers. Inasmuch as the court's subsequent inquiry was not adequate to ensure that defendant understood the nature of the charge and intelligently entered the plea, we would vacate the plea and remit this matter on this ground alone.

While we agree with the majority that count 3 could have been imposed as a consecutive sentence to counts 1 and 2, there is merit to defendant's argument that the People failed to show on this record that consecutive sentences could have been properly imposed on counts 1 and 2 as was stated to him by County Court (LaBuda, J.).[3] Review of the allegations in the indictment and the facts adduced at the allocution (*see People v Laureano*, 87 NY2d 640, 644 [1996]) do not reveal the length of the construction zone or where the two flagmen were located. The affirmation in opposition to defendant's motion by the Assistant District Attorney (who does not claim to have personal knowledge of the construction zone) gives no indication of the length of the zone. From this record, it is just as likely that the construction zone was 10 feet in length (or less) as it is that it was 10 miles (or more). The People's burden of showing "the

2. In his affidavit in support of his motion to withdraw the plea, defendant indicated that his attorney made the statement without consulting with him, that he did not agree with the statement, and that he was "attempting to assert my innocence, while in a vulnerable position."

3. Indeed, County Court's statement that "you will wind up getting about 12 to 48" years is incorrect even accepting the majority's position that counts 1 and 2 could have been consecutive.

crimes involved two separate and distinct acts" was not satisfied (*id.*; *see People v Rodriguez*, 217 AD2d 403, 404 [1995], *lv denied* 87 NY2d 850 [1995]; *see generally People v Rosas*, 8 NY3d 493, 496 [2007]; *cf. People v Kendrick*, 261 AD2d 646 [1999], *lv denied* 93 NY2d 1021 [1999]). Although receiving inaccurate information regarding a possible sentence is not dispositive, it is a relevant factor in considering whether a plea was knowing, intelligent and voluntary (*see People v Garcia*, 92 NY2d 869, 870 [1998]).

In summary regarding the plea, defendant asserted his innocence as to the alleged depraved indifference conduct, the Court of Appeals made clear in a decision shortly before the plea that a mens rea element was required, defendant's allocution tended to undermine such element, defendant was provided inaccurate information as to his sentence exposure, he made a timely and detailed motion to withdraw his plea, and the People—while opposing the motion—did not assert prejudice. We would hold, both as a matter of law as well as in the interest of justice, that defendant should have been permitted to withdraw his guilty plea (*see People v Leslie*, 98 AD2d 977 [1983]; *see also People v Derrick*, 188 AD2d 486, 487 [1992]; *People v Paulk*, 142 AD2d 754, 755 [1988], *appeal dismissed* 72 NY2d 960 [1988]).

Finally, we would note that, even if the plea is permitted to stand, there was error in enhancing defendant's sentence without affording him a meaningful opportunity to establish the plausible explanation offered for his initial failure to appear for sentencing. Enhancing a sentence without further inquiry is appropriate where a defendant fails to offer a plausible explanation for not adhering to *Parker* conditions (*see People v Carpenter*, 256 AD2d 1205 [1998], *lv denied* 93 NY2d 871 [1999]; *see also People v Therrien*, 301 AD2d 751, 752 [2003], *lv denied* 99 NY2d 633 [2003]; *People v Coleman*, 270 AD2d 713, 714 [2000]). However, defendant's counsel stated at sentencing that defendant was not present at the original sentencing dates because he was hospitalized with severe mental health issues. Counsel further requested that, if County Court (Ledina, J.) would not accept his statement in such regard, he be permitted to "put out subpoenas" for the purpose of proving such fact. The court nevertheless proceeded to enhance the sentence without commenting upon or allowing development of the plausible excuse offered by defendant.

Mercure, J.P., concurs. Ordered that the judgment is affirmed.