[907 NE2d 692, 879 NYS2d 814]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH GOLDSTEIN, Appellant.

Argued April 1, 2009; decided April 30, 2009

## POINTS OF COUNSEL

*Law Offices of Jacob Laufer, P.C.,* New York City (*Jacob Laufer* and *Shulamis Peltz* of counsel), for appellant. I. The guilty plea was not knowingly, voluntarily and intelligently entered. It should not have been accepted, and County Court further erred in denying Joseph Goldstein's motion to withdraw his guilty

plea. (*Brady v United States*, 397 US 742; *Boykin v Alabama*, 395 US 238; *Kercheval v United States*, 274 US 220; *People v Ford*, 86 NY2d 397; *People v Harris*, 61 NY2d 9; *Hill v Lockhart*, 474 US 52; *People v McDonald*, 1 NY3d 109; *People v Louree*, 8 NY3d 541; *People v Catu*, 4 NY3d 242; *People v Picciotti*, 4 NY2d 340.) II. The sentences could not have been imposed consecutively. (*People v Laureano*, 87 NY2d 640; *People v Rodriguez*, 217 AD2d 403, 87 NY2d 850; *People v Rosas*, 8 NY3d 493; *People v Kendrick*, 261 AD2d 646, 93 NY2d 1021; *People v Moffitt*, 20 AD3d 687; *People v Kindlon*, 217 AD2d 793; *People v Keindl*, 68 NY2d 410; *People v Shack*, 86 NY2d 529; *People v Okafore*, 72 NY2d 81; *Matter of Johnson v Morgenthau*, 69 NY2d 148.) III. Joseph Goldstein's legal representation was constitutionally infirm. His counsel made no motions, misadvised him regarding his sentencing exposure, and inexplicably advised him to plead guilty several days following his indictment to an agreed-upon sentence that resulted in the maximum sentence he would have faced after trial. (*Strickland v Washington*, 466 US 668; *People v McDonald*, 1 NY3d 109; *Hill v Lockhart*, 474 US 52; *People v Benevento*, 91 NY2d 708; *People v Ozuna*, 7 NY3d 913; *People v Caban*, 5 NY3d 143; *People v Rivera*, 71 NY2d 705; *People v DiLorenzo*, 39 AD3d 1032; *People v Masters*, 36 AD3d 959; *People v Grimes*, 35 AD3d 882.) IV. County Court erred in summarily enhancing the agreed-upon sentence, following defendant's nonappearance for sentencing, when defendant, who had voluntarily appeared on the adjourned date, and was in custody, protested that there was psychiatric proof explaining his earlier nonappearance and requested a brief adjournment to have his attorney of record (and not an attorney who had appeared at sentencing in his stead) represent him and present this evidence. Moreover, an enhanced consecutive sentence that would have been improper ab initio could not be imposed for failure to appear. (*People v Parker*, 57 NY2d 136; *People v Terrell*, 41 AD3d 1044; *People v Parker*, 271 AD2d 63, 95 NY2d 967; *People v Outley*, 80 NY2d 702; *People v Perham*, 263 AD2d 766; *People v Bowden*, 221 AD2d 723, 87 NY2d 919; *People v Carpenter*, 256 AD2d 1205, 93 NY2d 871; *People v Jenkins*, 29 AD3d 1177, 9 NY3d 991; *People v Knowles*, 244 AD2d 425; *People v De Maio*, 304 AD2d 988.)

*Stephen F. Lungen, District Attorney*, Monticello (*Karen Mannino, Bonnie M. Mitzner* and *Stephen Wyder* of counsel), for respondent. I. Appellant's pleas were voluntarily entered. (*Boykin v Alabama*, 395 US 238; *Brady v United States*, 397 US 742; *People v Luster*, 148 AD2d 305, 74 NY2d 666; *People v Davis*, 12

AD3d 237; *People v Kendrick,* 261 AD2d 646, 93 NY2d 1021; *People v Smith,* 113 AD2d 905, 66 NY2d 922; *People v Purnell,* 22 AD3d 871; *People v Hardy,* 32 AD3d 1317, 7 NY3d 925; *People v Moffitt,* 20 AD3d 687, 5 NY3d 854; *People v Nixon,* 21 NY2d 338, 393 US 1067.) II. The trial court properly exercised its discretion by accepting appellant's guilty pleas and by denying his motion to withdraw the pleas. (*People v Alexander,* 97 NY2d 482; *People v Ramos,* 63 NY2d 640; *People v Knowles,* 244 AD2d 425; *People v Grady,* 110 AD2d 780; *People v Baret,* 11 NY3d 31; *People v McKennion,* 27 NY2d 671.) III. The trial court properly enhanced appellant's sentence based on his failure to appear for sentencing. (*People v Outley,* 80 NY2d 702; *People v Parker,* 57 NY2d 136.)

## OPINION OF THE COURT

Chief Judge LIPPMAN.

Defendant was charged by indictment with two counts of reckless endangerment in the first degree (Penal Law § 120.25), one count of aggravated unlicensed operation of a motor vehicle in the first degree (Vehicle and Traffic Law § 511 [3]) and numerous misdemeanors and violations. According to the indictment, defendant, while driving with a suspended license, was pulled over by a police officer for failing to observe a stop sign. When asked by the officer to produce his license, defendant sped away, committing numerous traffic offenses and, in the course of being chased, drove his Ford Explorer at a high speed through a one-lane construction zone into oncoming traffic, causing flagmen at each end of the zone to jump out of the way of his vehicle. Defendant's license had been suspended some 28 times and he had an extensive criminal record, including at least two felonies. He was on probation at the time of the events here at issue.

At the plea proceedings, defendant was informed by the court that, if he went to trial and was convicted, he faced consecutive sentences. Defendant indicated in substance that, in accordance with the previously agreed upon plea bargain, he wished to enter a plea of guilty to the indictment's top three counts in full satisfaction of the accusatory instrument and understood that he would be sentenced to concurrent terms, the longest of which would be 3 1/2 to 7 years. He acknowledged that, at the time of the events in question, he had been driving in the town of Liberty, New York without a valid license; that his license had previously been suspended on 28 occasions; that he drove a Ford Explorer through a construction zone "pretty fast"; and that he observed, but did not obey, flagmen directing traffic into

and out of the single lane passing through the work zone. During this allocution, the following exchange took place:

> "THE COURT: And did you ignore the traffic directions and cause one of the construction workers to jump out of the way to avoid being hit by your car? . . .
>
> "THE DEFENDANT: I don't know if he jumped out, your honor. I know I went by.
>
> "THE COURT: Very close. You could have killed him if you hit him?
>
> "THE DEFENDANT: I don't think so. I don't know.
>
> "THE COURT: You didn't kill him, of course. But, you came so close that you created a situation that was very dangerous.
>
> "[DEFENSE COUNSEL]: Your honor, we don't dispute the allegation. My client has no recollection of particular individuals. But, we don't dispute the allegations and I have had an opportunity to review the allegations, as well as the statement with my client, and we don't dispute the voracity [sic] of the situation."

After accepting defendant's plea, the court warned defendant that his failure to appear for sentencing on the appointed date would result in a sentence of 12 to 48 years. It is clear that a sentence of that length could not have been imposed.

Some 3½ months after entering his plea, defendant, represented by new counsel, moved unsuccessfully before a different judge to withdraw it.

The essential issues raised on the motion, and upon which the Appellate Division Justices differed in their disposition of the ensuing appeal to that Court, are whether defendant was misinformed as to what appears to have been the only real benefit of his plea (i.e., concurrent as opposed to consecutive sentences), and whether the allocution was fatally defective with respect to the reckless endangerment counts. These issues, decided against defendant by the Appellate Division majority (51 AD3d 1271 [2008]), are now before us by leave of a Justice of that Court (CPL 460.20; 11 NY3d 743 [2008]).

■ Defendant's contention that he was misinformed as to the possibility of receiving consecutive sentences if he went to trial is without merit. While it is arguable that the allegations of the indictment and facts adduced at the allocution did not sufficiently demonstrate that the two reckless endangerment counts were based on distinct acts for which consecutive

sentences could be imposed—since neither the indictment nor the allocution indicated the length of the construction zone or the interval between the defendant's alleged near misses of the construction zone flagmen (*see generally People v Laureano*, 87 NY2d 640, 644 [1996])—it is clear, and, indeed, on this point the Appellate Division Justices agreed, that the conduct underlying the count alleging aggravated unlicensed operation of a motor vehicle was distinct from that involved in the ensuing reckless endangerment offenses and thus permitted a consecutive sentence. Defendant's plea, then, would have afforded him the considerable benefit of avoiding exposure to consecutive sentences had he appeared for sentencing as directed. This being the case, defendant's contentions that he was misled into a worthless plea bargain and that he was denied effective representation in connection with the plea bargain would appear untenable. While it is true that the plea court grossly misrepresented defendant's exposure to consecutive sentencing in the course of administering *Parker* warnings (*see People v Parker*, 57 NY2d 136 [1982]), this occurred after the plea had been entered. There is no indication that the misinformation figured in defendant's decision to plead as he did. The only representation of record made to the defendant by the court prior to the entry of his plea was, simply, that a consecutive sentence was possible, but that under the plea bargain the sentence would be concurrent. This was accurate.

The argument as to the adequacy of the allocution is based on defendant's claimed inability, when asked, to state whether he had passed perilously close to the construction zone flagmen. Defendant's asserted ignorance on this point is said to negate the mental state of depraved indifference, which is elemental to first degree reckless endangerment (*see People v Feingold*, 7 NY3d 288 [2006]). But defendant's professed inability at the time of the plea to remember whether he nearly hit the flagmen does not "negate" the accusation that he acted with depraved indifference at the time of the incident. Defendant's counsel explained that although defendant did not remember the "particular individuals," he and his client had reviewed the allegations and did not dispute them. Certainly, the court was not presented with a protestation of innocence.

If the issue were whether the facts specifically admitted by defendant during the allocution would, if proved, suffice to support a conviction, the question would be close; defendant ably argues that what was made out in the allocution itself amounted to no more than second degree reckless endangerment (Penal

Law § 120.20), a non-depraved indifference offense. But an allocution based on a negotiated plea need not elicit from a defendant specific admissions as to each element of the charged crime. Nor is "[t]he court's duty to inquire further . . . triggered merely by the failure of a pleading defendant, whether or not represented by counsel, to recite every element of the crime pleaded to" (*see People v Lopez*, 71 NY2d 662, 666 n 2 [1988]). Indeed, no catechism is required in connection with the acceptance of a plea (*see People v Nixon*, 21 NY2d 338, 350 [1967]) and we have refused to disturb pleas by canny defendants even when there has been absolutely no elicitation of the underlying facts of the crime (*see People v Fooks*, 21 NY2d 338, 350 [1967] [decided with *People v Nixon*]). It is enough that the allocution shows that the defendant understood the charges and made an intelligent decision to enter a plea (*id.*). Here, the allocution was adequate to meet these purposes. The defendant, represented by counsel and no novice to the criminal justice system, clearly understood the nature of the charges to which he was pleading and willingly entered his plea to obtain the benefit of the bargain he had struck.

■ Defendant's remaining argument is that the court abused its discretion when it enhanced his sentence by reason of his failure to appear for sentencing on the appointed date, without affording him an opportunity to substantiate his proffered psychiatric excuse for his absence. However, had there been any plausible psychiatric reason for defendant's failure to appear on the two prior scheduled sentencing dates, it is to be expected that defendant would have been prepared at sentencing with some supporting documentation, particularly after a warrant had been issued to secure his appearance. Under the circumstances, including, notably, defendant's extensive history of nonappearances—many of his license suspensions having resulted from failing to appear—the court's decision to proceed with sentencing, and to enhance the sentence by reason of defendant's failure to heed the *Parker* warnings he had been given, did not rise to the level of an abuse of discretion.

Accordingly, the order of the Appellate Division should be affirmed.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order affirmed.