People v Dibble
2026 NY Slip Op 02893
May 7, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, Respondent,
v
Monique Dibble, Appellant.

Decided and Entered:May 7, 2026
CR-24-0466
Calendar Date: April 23, 2026
Before: Clark, J.P., Aarons, Pritzker, Mcshan And Ryba, JJ.

Jan Perlin, Oak Hill, for appellant.
Emmanuel C. Nneji, District Attorney, Kingston (Joan Gudesblatt Lamb of counsel), for respondent.

[*1]
Pritzker, J.
Appeal from a judgment of the County Court of Ulster County (Bryan Rounds, J.), rendered January 24, 2024, convicting defendant upon her plea of guilty of the crimes of criminal sale of a controlled substance in the third degree and criminally negligent homicide.
Defendant pleaded guilty to criminal sale of a controlled substance in the third degree and criminally negligent homicide. County Court admonished defendant that it would not be bound by the sentencing agreement of a five-year prison term, to be followed by two years of postrelease supervision, on the criminal sale conviction and a lesser concurrent prison term on the remaining conviction if she did not abide by certain conditions, including that she cooperate with and truthfully answer all questions asked by the Department of Probation in preparation of the presentence report (hereinafter PSR). At sentencing, the court determined that defendant violated the condition to truthfully answer the questions posed by the Probation Department and imposed an enhanced sentence.
Upon appeal, this Court vacated the sentence and remitted the matter to County Court for a more thorough inquiry as to whether a condition of the plea agreement was violated (222 AD3d 1110 [2023]). A Hicks hearing ensued (see People v Hicks, 98 NY2d 185, 189 [2002]), at the conclusion of which County Court found that defendant violated the terms of the plea agreement and determined that an enhanced sentence was warranted. Ultimately, the court imposed the maximum permissible prison term of nine years, to be followed by two years of postrelease supervision, on the criminal sale conviction and the lesser, agreed-upon concurrent sentence upon her conviction of criminally negligent homicide. Defendant appeals, and we reverse.
"[I]t is well established that the violation of an explicit and objective plea condition, including a condition that a defendant truthfully answer questions during an interview with probation in compiling information for the PSR, can result in the imposition of an enhanced sentence" (People v Davis, 246 AD3d 1188, 1189-1190 [3d Dept 2026]; see People v Hendrie, 232 AD3d 1067, 1069 [3d Dept 2024]; People v Larock, 211 AD3d 1234, 1235 [3d Dept 2022]). Here, the condition that defendant was found to have violated required her to "cooperate with the Probation Department in the preparation of [the PSR]." County Court explained that this meant several things, including "answer[ing] their questions truthfully and respectfully." Additionally, at the outset of the plea proceeding, the court informed defendant that imposition of the agreed-upon sentence was "conditioned on [defendant] giving answers to the Probation Department that are consistent with [her] plea of guilty." The probation officer who interviewed defendant testified at the Hicks hearing that defendant told her that the victim contacted defendant and asked her to get drugs. Defendant explained that she obtained heroin, which she used with the victim[*2], and that when she and the victim parted ways, the victim took the remaining heroin with her. Defendant told the probation officer that she learned the next day that the victim had died and that she believed the victim had obtained more drugs after leaving defendant and it was those drugs that caused the victim's death.FN1 Defendant also informed the probation officer that she entered into the plea agreement to avoid a larger sentence. Based upon the testimony during the hearing, County Court determined that defendant had committed a Hicks violation upon her failure to accept responsibility, lack of remorse and denial to the probation officer that she caused the victim's death.FN2
Initially, as to County Court's determination that there was a Hicks violation based upon defendant's purported failure to accept responsibility for causing the victim's death and perceived lack of remorse, neither of these were conditions of the plea agreement as set forth specifically by the court at the time of plea (see People v Armstead, 52 AD3d 966, 967-968 [3d Dept 2008]; see generally People v Becker, 80 AD3d 795, 796 [3d Dept 2011]). Although it may stand to reason, as the court did, that accepting responsibility and showing remorse are part and parcel of the expressly stated condition to "giv[e] answers . . . that are consistent with [her] plea of guilty," in this case it cannot be said that giving consistent answers with her guilty plea was a condition that was clearly explained.
At the time of the plea, defendant admitted to "acting with criminal negligence" and causing the victim's death. As the Court of Appeals has stated, "[a] defendant acts with criminal negligence in this context when the defendant 'fails to perceive a substantial and unjustifiable risk' that death will result" (People v Gaworecki, 37 NY3d 225, 230 [2021], quoting Penal Law § 15.05 [4]). This mens rea differs significantly from that of a crime wherein a defendant acts intentionally or knowingly (see Penal Law § 15.05). Indeed, a crime requiring an intentional or knowing mental state provides a much clearer line when determining whether a defendant has given statements to the Probation Department that are consistent with his or her guilty plea, and thus demonstrate an acceptance of responsibility (see e.g. People v Hicks, 98 NY2d at 187-188; People v Maclean, 226 AD3d 1178, 1181 [3d Dept 2024], lv denied 41 NY3d 1019 [2024]; People v Blackwell, 62 AD3d 896, 897 [2d Dept 2009]). In this case, that line was clear with defendant's plea to knowingly and unlawfully selling the victim heroin the day before she died (see Penal Law § 220.39), which defendant consistently admitted.FN3 However, as to defendant's guilty plea to criminally negligent homicide, the line is not so clear, in part due to the culpable mental state of the crime.
Further complicating this case is the manner in which defendant was asked to admit to her actions, both at the time of the guilty plea and then during the probation interview[*3]. Specifically, at the time of the plea, defendant was not asked to make any factual recitation. Rather, County Court read from the second count of the superior court information and asked defendant if it was true that she, "on or between May 23[ ] and May 24, 2018, acting with criminal negligence caused the death of another person." Defendant answered affirmatively and pleaded guilty. However, during the probation interview, testimony at the hearing demonstrated that the probation officer asked defendant "what happened," seeking only a "story version" of what occurred. Such an open-ended request for a narrative raises the question of whether any inconsistencies in defendant's account of events were due, at least in part, to having been asked different questions (see People v Hendrie, 232 AD3d at 1070; see also People v Becker, 80 AD3d at 796-797).
In this vein, defendant consistently stated throughout her testimony that she was honest and truthful during the probation interview and also admitted that she made statements that she believed the victim obtained other drugs that caused her death. These two things are not inherently inconsistent with one another. Certainly, defendant's conduct in selling the victim heroin and, in doing so, failing to perceive a substantial and unjustifiable risk that death would result could have "set in motion and legally caused" the victim's death (People v Matos, 83 NY2d 509, 511 [1994]) and the victim could have also obtained and used drugs she acquired elsewhere that also caused her death. This is especially so given that defendant also used the same heroin she gave the victim, yet defendant did not die. However, as the probation officer testified, she did not ask defendant any follow up questions, including whether "the drugs she provided to [the victim] could have been a contributing factor or cause of her death."
Moreover, had the People instead presented the matter to a grand jury, to defeat a legal sufficiency challenge they would have needed to present some evidence to demonstrate "defendant's awareness of any real threat to the [victim's] life 'beyond the general knowledge of the injuriousness of drug-taking,' " as the sale of heroin in and of itself would not be sufficient (People v Gaworecki, 37 NY3d at 233, quoting People v Cruciani, 36 NY2d 304, 305 [1975]). Given that a factual allocution for a negotiated plea does not require specific admissions as to each element of the charged crime (see People v Goldstein, 12 NY3d 295, 301 [2009]), we do not know what "substantial and unjustifiable risk" to the victim's life defendant failed to perceive when she gave her heroin (People v Gaworecki, 37 NY3d at 230 [internal quotation marks and citation omitted]). Although the felony complaints recited the facts underlying defendant's original charges, the minimal facts set forth in the superior court information are not the same. Specifically, the felony complaint for the criminal sale of a controlled substance alleged [*4]that defendant sold the victim fentanyl. However, the superior court information alleged that defendant sold the victim heroin. As a result, it is not clear from the record whether the particular risk defendant believed she failed to perceive when pleading guilty was different from the risk understood by County Court. Such a disparity calls into question whether the conditions of consistency and truthfulness were explicitly stated. Accordingly, we find that it was an abuse of discretion for County Court to impose an enhanced sentence based upon a Hicks violation (see People v Hendrie, 232 AD3d at 1070; People v Becker, 80 AD3d at 796-797), and we vacate the enhanced nine-year prison sentence as to the conviction of criminal sale of a controlled substance in the third degree and instead impose the agreed-upon sentence of five years in prison.FN4
Clark, J.P., Aarons, McShan and Ryba, JJ., concur.
ORDERED that the judgment is modified, on the law, by reducing the sentence for defendant's conviction of criminal sale of a controlled substance in the third degree to five years in prison, to be followed by two years of postrelease supervision, and, as so modified, affirmed.

Footnotes

Footnote 1
The record demonstrates that approximately 10 hours elapsed between the time defendant and the victim parted ways and the victim's death.

Footnote 2
We note that, at the original sentencing proceeding, the People represented that they did not view defendant's statement to probation to "constitute a violation of her plea conditions and, consequently, that they were not seeking a sentencing enhancement" (People v Dibble, 222 AD3d at 1111-1112). Upon remittal, the People informed County Court that they took part in the hearing "[i]n light of the [Third Department's] decision," but that they were deferring to the court's discretion as to whether there was a Hicks violation.

Footnote 3
We note that there was significant testimony during the hearing regarding whether defendant and the probation officer understood that the definition of sale did not necessarily require the exchange of money (see Penal Law § 220.00 [1]). We do not find, and neither did County Court, that any confusion regarding this concept formed the basis for the court's conclusion that defendant violated the terms of the plea agreement.

Footnote 4
We find it necessary to clearly state that nothing in this decision should be taken as a broad determination that a defendant who pleads guilty to a crime with a culpable mental state of criminal negligence can never commit a Hicks violation or, similarly, that there can never be a Hicks violation when there may be more than one cause of death. Rather, in those situations, it is incumbent on County Court to determine whether it may be appropriate to either seek additional facts during the plea allocution or more clearly inform the defendant of what is expected during the interview with the Probation Department.