El Juez Asociado Señor Rivera García
emitió la opinión del Tribunal.
Este recurso nos presenta la oportunidad de examinar la imbricación inexorable del privilegio abogado-cliente con el deber ético de confidencialidad que todo abogado debe a sus clientes y el derecho constitucional a no incriminarse que posee toda persona imputada de delito. En específico, debemos resolver si determinada información que vincula al peticionario con conducta delictiva —ofrecida a un agente del orden público por su abogado— constituye ma-teria privilegiada inadmisible en evidencia o, por el contra-rio, si dicha información es admisible en razón de una re-nuncia al privilegio y al derecho a no incriminarse. Veamos.
I
El caso que nos ocupa tiene su génesis en un doble ase-sinato ocurrido el 1 de noviembre de 2006, en el barrio Venezuela de Río Piedras. Se deduce del legajo, que en horas de la tarde de ese día Waldemar Fernández Rodríguez acudió al Cuartel General de la Policía (Cuartel General) en compañía de su abogado, Ledo. Luis Carbone, y de su amigo, también abogado, el Ledo. Ovidio Zayas. Una vez en el Cuartel General, el señor Fernández Rodríguez, el licen- *777 ciado Carbone y el licenciado Zayas fueron entrevistados por el sargento José Curbelo Muñiz, adscrito a la División de Homicidios. Véase Apéndice de Petición de certiorari, pág. 15.
A preguntas del sargento Curbelo, el licenciado Carbone expresó que en ese momento su cliente no emitiría declara-ción alguna sobre los hechos, pero que posteriormente sí lo haría. Consecuentemente, el sargento Curbelo leyó las ad-vertencias de ley al señor Fernández Rodríguez y este las firmó en presencia de su abogado. Luego, el señor Fernán-dez Rodríguez fue puesto en una celda bajo la custodia de otros agentes. Acto seguido, el sargento Curbelo se reunió aparte y a solas con el licenciado Carbone para indagar so-bre el arma con que alegadamente se habían cometido los asesinatos. Véase Apéndice de Petición de certiorari, págs. 15-16.
A raíz de la investigación de los hechos, se presentaron sendas denuncias contra el peticionario. El 3 de enero de 2007 se celebró la vista al amparo de la Regla 6 de Procedi-miento Criminal, 34 L.P.R.A. Ap. II. El peticionario estuvo representado por varios abogados, entre ellos el licenciado Carbone. Estos no objetaron el testimonio en cuestión del sargento Curbelo. Escuchada la prueba, se determinó causa probable para arresto contra el señor Fernández Rodríguez. La vista preliminar fue señalada para el 17 de enero de 2007. Véase Apéndice de Petición de certiorari, pág. 145.
Luego de varias suspensiones, la vista preliminar co-menzó el 25 de mayo de 2007, y se extendió por varios meses. Ese día las partes estipularon la prueba siguiente: (1) el informe de balística; (2) la prueba de ADN; (3) el aná-lisis forense de la ropa incautada al señor Fernández Rodrí-guez; (4) servilletas y marcas de sangre de uno de los occi-sos, y (5) el registro del arma de fuego y la licencia de tiro al blanco del señor Fernández Rodríguez. Véase Apéndice de Petición de certiorari, págs. 146-147.
Posteriormente, en la continuación de la vista prelimi-nar los días 25 y 29 de octubre de 2007, el Ministerio Pú-blico presentó como parte del desfile de prueba siete testi- *778 gos, entre los que figuró el sargento Curbelo. Este declaró que el 1 de noviembre de 2006, como a las 5:00 p.m., escu-chó por radio que hubo una muerte violenta en la barriada Venezuela de Río Piedras, por lo que se personó al lugar. Estando en la escena, fue instruido para que acudiera al Cuartel General debido a que allí se encontraba una persona relacionada a los hechos acaecidos acompañado de dos abogados. El testigo añadió que en el Cuartel General entrevistó al licenciado Carbone y que este le indicó que representaba al señor Fernández Rodríguez. Específica-mente, señaló que el licenciado Carbone le expresó que el señor Fernández Rodríguez no haría declaración alguna en ese momento ya que estaba muy nervioso y que posterior-mente ofrecería una declaración completa de los hechos ocurridos. Véase Transcripción de Vista Preliminar de 25 y 29 de octubre de 2007, págs. 6-9, CC-2009-0622, Pieza 2.
El sargento Curbelo declaró, además, que con posterio-ridad a que el licenciado Carbone le informara que su cliente guardaba relación con los hechos ocurridos en la barriada Venezuela, ellos tres (el señor Fernández Rodrí-guez, el licenciado Carbone y él) se ubicaron en una oficina del cuartel para hacerle las advertencias de ley al imputado. Así, señaló que el señor Fernández Rodríguez leyó las advertencias de rigor y las firmó en presencia de su abogado. Continuó narrando que el señor Fernández Rodríguez fue puesto bajo la custodia de otro agente en un lugar distinto a la oficina donde se encontraban, por lo que procedió a entrevistar a solas al licenciado Carbone. Véase Transcripción de Vista Preliminar de 25 y 29 de octubre de 2007, págs. 46-47 y 49, CC-2009-0622, Pieza 2.
Así las cosas, el sargento Curbelo declaró que durante la entrevista el licenciado Carbone manifestó que su cliente era extorsionado por los occisos desde hacía un tiempo. De inmediato, el sargento Curbelo inquirió al licenciado Car-bone sobre la localización del arma de fuego utilizada para cometer los asesinatos, a lo que este contestó que estaba tirada en una jardinera de una casa aledaña al área de los hechos. Con esa información, el sargento Curbelo procedió *779 a llamar a la agente Baliza Ortiz Claudio, quien se encon-traba en la escena del crimen. Una vez estableció comuni-cación con la agente, el sargento Curbelo pasó el teléfono al licenciado Carbone para que este explicara a la agente Ortiz Claudio los detalles sobre la ubicación exacta del arma. Al no poder localizar el cargador ni las municiones, pero sí el arma de fuego, la agente Ortiz Claudio llamó de vuelta al sargento Curbelo para explicarle lo sucedido. Así, el sar-gento Curbelo la comunicó nuevamente con el licenciado Carbone y este le indicó a la agente dónde estaban el car-gador y las municiones. Véase Transcripción de Vista Pre-liminar de 25 y 29 de octubre de 2007, págs. 12-14, CC-2009-0622, Pieza 2.
En su contrainterrogatorio, el sargento Curbelo recono-ció que la información abogado-cliente es de naturaleza privilegiada. De igual forma, a preguntas de la defensa, indicó que una vez hizo las advertencias de ley al señor Fernández Rodríguez no le preguntó si iba a emitir una declaración, ya que el licenciado Carbone le había dicho expresamente que su cliente no iba a hacer manifestación alguna porque se encontraba muy nervioso. Asimismo, el testigo añadió que, a su entender, el señor Fernández Ro-dríguez no había hecho renuncia alguna a su privilegio abogado-cliente, como tampoco autorizó al licenciado Car-bone a que declarara por él. Véase Transcripción de Vista Preliminar de 29 de octubre de 2007 y 7 de mayo de 2008, págs. 47-52, CC-2009-0622, Pieza 2. Finalmente, durante su contrainterrogatorio, el sargento Curbelo admitió que no preguntó al señor Fernández Rodríguez si renunciaba a sus derechos constitucionales y que este no había autori-zado al licenciado Carbone a divulgar información privilegiada. Id.
En consecuencia, el señor Fernández Rodríguez solicitó que se suprimiera el testimonio del sargento Curbelo, así como la evidencia ocupada. En apoyo de su petitorio, el imputado adujo que el testimonio del sargento Curbelo era inadmisible debido a que era producto de una declaración confidencial que él le hizo a su abogado, que esta declara- *780 ción era de naturaleza privilegiada y que estaba cobijada por el privilegio abogado-cliente. También alegó, que el arma y las municiones ocupadas constituían frutos del ár-bol ponzoñoso, pues su descubrimiento fue producto directo de una conversación privilegiada. Véase Apéndice de Peti-ción de certiorari, pág. 146.
Luego de diversos trámites procesales, en febrero de 2008 el Tribunal de Primera Instancia emitió una resolución me-diante la cual descalificó al licenciado Carbone como abo-gado del señor Fernández Rodríguez y lo citó para que com-pareciera como testigo a la vista de supresión de evidencia. Además, el foro primario citó como testigo al licenciado Za-yas, quien estuvo presente en ciertas conversaciones entre el licenciado Carbone y el imputado Fernández Rodríguez. Todo ello en aras de escudriñar adecuadamente la solicitud de supresión del testimonio del sargento Curbelo. Apéndice de la Petición de certiorari, pág. 146. Véase, además, Trans-cripción de Vistas de 29 de octubre 2007 y 7 de mayo de 2008, págs. 106-108, CC-2009-0622, Pieza 2.
Así, pues, el 7 de mayo de 2008 el Tribunal de Primera Instancia celebró una vista de supresión de evidencia en la que testificaron el licenciado Carbone y el licenciado Zayas, entre otros. En esencia, el licenciado Carbone negó haber informado al sargento Curbelo sobre la localización del arma, cargador y municiones debido a que no estuvo en el lugar de los hechos y desconocía totalmente esta información. Véase Transcripción de Vistas de 29 de octubre 2007 y 7 de mayo de 2008, págs. 106-108, CC-2009-0622, Pieza 2. Véase, además, Apéndice de la Petición de certio-rari, pág. 146. Por su parte, el licenciado Zayas testificó, en lo pertinente, que el 1 de noviembre de 2006 acompañó al señor Fernández Rodríguez al Cuartel General en calidad de amigo y no como su abogado. Véase Apéndice de la Peti-ción de certiorari, págs. 146-147.
Culminada la vista de supresión de evidencia, el 9 de mayo de 2008 el Tribunal de Primera Instancia dictó dos resoluciones. En la primera de ellas, el foro primario de-claró no ha lugar la moción de supresión de evidencia pre- *781 sentada por el señor Fernández Rodríguez. En el referido dictamen, el tribunal de instancia señaló que no confirió cre-dibilidad al testimonio del licenciado Carbone ni al del licen-ciado Zayas porque habían omitido hechos importantes y fueron inconsistentes sus declaraciones. Véase Apéndice de la Petición de certiorari, pág. 147.
Cónsono con lo anterior, el tribunal primario sostuvo que no se había violado el privilegio abogado-cliente del señor Fernández Rodríguez. Ello, debido a que su intención siem-pre fue acudir al Cuartel General para entregarse. A esos efectos, añadió que Fernández Rodríguez compareció acom-pañado y asesorado por su abogado, el licenciado Carbone, se presentó con la intención de hacer unas declaraciones sobre un doble asesinato que había ocurrido esa misma tarde y estuvo presente cuando su abogado divulgó la razón para su comparecencia. Véase Apéndice de la Petición de certiorari, págs. 65 y 146-147.
Por otra parte, en la segunda resolución, el Tribunal de Primera Instancia determinó causa probable para acusar por dos cargos de asesinato, dos cargos al amparo del Art. 5.15 y un cargo por infracción al Art. 5.04 de la Ley Núm. 404-2000, según enmendada, conocida como Ley de Armas de Puerto Rico. Véase Apéndice de la Petición de certiorari, pág. 65.
Subsiguientemente, el 16 de mayo de 2008 el Pueblo presentó las acusaciones según autorizadas contra el señor Fernández Rodríguez. El 9 de junio del mismo año, el im-putado presentó una Moción de Desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. En su escrito adujo que la determinación de causa probable para acusar fue contraria a derecho debido a que la prueba presentada en la vista preliminar era inadmisi-ble e ilegal por ser producto de información privilegiada, la cual fue confiada por el imputado a su representante legal. Además, señaló que la única prueba que lo ataba a los hechos era el testimonio del sargento Curbelo y que, siendo el mismo inadmisible, la determinación de causa probable *782 era contraria a derecho. Oportunamente, el 7 de agosto de 2008 la Fiscalía presentó su oposición al petitorio de des-estimación presentada por el imputado. Véase Apéndice de la Petición de certiorari, págs. 65-69.
Luego de varias incidencias procesales, el 29 de diciem-bre de 2008 el foro primario emitió una resolución en la que denegó la solicitud de desestimación del imputado. En su dictamen puntualizó que aunque el señor Fernández Rodríguez no renunció a su privilegio abogado-cliente, el testimonio del sargento Curbelo era admisible. Ello, debido a que el sargento Curbelo actuó conforme a la doctrina de “autoridad aparente”. Es decir,
... el Sargento Curbelo estaba convencido de que el licenciado Carbone estaba autorizado a divulgar [la] información que divulgó. Ciertamente aparentaba tenerla. Las propias actua-ciones del licenciado Carbone son las que dan base “a la buena fe de los agentes de la policía y permite llegar a una creencia o conclusión razonable de que la persona que representa tener la autoridad ... la tiene”. Apéndice de la Petición de certiorari, pág. 86.
Inconforme, el 28 de enero de 2009 el imputado presentó un recurso de certiorari ante el Tribunal de Apelaciones. El Ministerio Público, por su parte, se opuso oportunamente. Estudiados los argumentos de las partes, el 22 de mayo de 2009 el Tribunal de Apelaciones dictó una sentencia y con-firmó la resolución recurrida. Sostuvo que la determina-ción de causa probable para acusar fue conforme a derecho ya que el peticionario renunció tácitamente al privilegio abogado-cliente. Ello, pues la prueba desfilada reveló que su intención siempre fue acudir al Cuartel General para entregarse. Véase Apéndice de la Petición de certiorari, pág. 172.
Además, el foro apelativo intermedio señaló que el peti-cionario no objetó oportunamente el testimonio del sar-gento Curbelo durante la vista de causa probable para arresto. Por esta razón, dicho foro coligió que era innecesa-rio que el Tribunal de Primera Instancia aplicara por ana- *783 logia la doctrina de “autoridad aparente”. Apéndice de la Petición de certiorari.(1)
Nuevamente insatisfecho, el 21 de julio de 2009 el impu-tado presentó una petición de certiorari ante este Tribunal. En ella señaló la comisión de los errores siguientes:
Erró el Tribunal de Apelaciones al confirmar la resolución del Tribunal de Primera Instancia denegando la moción de desestimación presentada por el peticionario bajo las disposi-ciones de la Regla 64(p) de Procedimiento Criminal a pesar de que la determinación de causa probable fue contraria a dere-cho ya que la misma se basó en prueba que legalmente no era admisible.
Es errada la decisión del foro apelativo intermedio a los efectos de que medió una renuncia implícita al privilegio abo-gado-cliente porque: el peticionario había comparecido volun-tariamente al Cuartel General de la Policía en relación a una investigación de unos hechos delictivos; la información ofre-cida por el abogado que lo representó en ese momento no fue compelido a ofrecer la información en relación a dónde se en-contraba el arma de fuego sino que brindó voluntariamente y sin coacción tal información; y no invocó oportunamente dicho privilegio en el procedimiento judicial seguido en su contra. Petición de certiorari, págs. 5-6.
Con el beneficio de la comparecencia de las partes y sus respectivos alegatos, procedemos a resolver.
II
[1 ] Como es sabido, los privilegios surgen de la Cons-titución, de la ley, de las Reglas de Evidencia o de las leyes especiales. La Constitución, por un lado, puede crear pri-vilegios, como lo es el que se deriva del derecho contra la autoincriminación. Por otro lado, la Constitución puede li-mitar —y hasta suprimir— el alcance de un privilegio cuando su aplicación está reñida con un derecho fundamental. E.L. Chiesa Aponte, Tratado de Derecho Probatorio, San Juan, Pubs. JTS, 2005, T. I, págs. 169-170.
*784 Los privilegios evidencíanos buscan adelantar valores e intereses sociales que por consideraciones de política pública se estiman superiores a la búsqueda de la verdad. Chiesa Aponte, op. cit., pág. 169. El fundamento tradicional es el utilitarismo. Es decir, “[s]e estima que el sacrificio de evidencia con claro valor probatorio se justifica para adelantar un alto interés público. ... Mientras más alto sea el interés público que se quiere adelantar con el privilegio, mayor será su alcance y menor las excepciones al privilegio”. E.L. Chiesa Aponte, Reglas de Evidencia de Puerto Rico 2009, San Juan, Pubs. JTS, 2009, pág. 149. Véase, además, R. Emmanuelli, Prontuario de derecho probatorio de Puerto Rico, Santo Domingo, Ed. Corripio, 1994, pág. 214.
En ese contexto, todo proceso judicial, particularmente el criminal, tiene el fin esencial de descubrir la verdad de lo acontecido, razón por la cual no debe exceptuarse o excluirse la debida exposición de los hechos pertinentes, salvo que exista un interés superior o de mayor jerarquía para la sociedad o para la persona que se interponga a ese fin. Pueblo v. De Jesús Delgado, 155 D.P.R. 930 (2001). Dicho de otro modo, los privilegios, por su naturaleza y función, impiden el descubrimiento de ciertos actos, hechos o comunicaciones por existir intereses en conflicto que intervienen con esa búsqueda exhaustiva de la verdad. Es por ello que los privilegios, contenidos en las Reglas de Evidencia, se interpretan restrictivamente. De ahí que el fundamento de los privilegios sea totalmente independiente de la búsqueda de la verdad. Es decir, se excluye materia privilegiada por razones y consideraciones de política pública, para adelantar valores o intereses sociales ajenos o antagónicos a la búsqueda de la verdad, tan fundamental para la más justa adjudicación de las controversias judiciales. Ortiz v. Meléndez, 164 D.P.R. 16 (2005).
A. El privilegio abogado-cliente
Al momento de los hechos delictivos ante nuestra consi- *785 deración, la Regla 25 de las derogadas Reglas de Evidencia de Puerto Rico de 1979 (32 L.P.R.A. Ap. IV (ed. 2001)), encarnaba el privilegio abogado-cliente de la manera si-guiente:
(A) Según usadas en esta regla, las siguientes expresiones tendrán el significado que a continuación se indica:
(1) Abogado: Persona autorizada o a quien el cliente razo-nablemente creyó autorizada a ejercer la profesión de abo-gado; incluye a la persona así autorizada y a sus asociados, asistentes y empleados de oficina.
(2) Cliente: Persona natural o jurídica que, directamente o a través de representante autorizado, consulta a un abogado con el propósito de contratarle o de obtener servicios legales o consejo en su capacidad profesional; incluye al incapaz que consulta él mismo a un abogado o cuyo tutor o encargado hace tal gestión con el abogado a nombre del incapaz.
(3) Comunicación Confidencial: Aquella comunicación ha-bida entre un abogado y su cliente en relación a alguna gestión profesional, basada en la confianza de que no será divulgada a terceras personas, salvo a aquellas personas que sea necesario para llevar a efecto los propósitos de la comunicación.
(B) Sujeto a lo dispuesto en esta regla, el cliente, sea o no parte en el pleito o acción, tiene el privilegio de rehusar reve-lar, y de impedir que otro revele, una comunicación confiden-cial entre él y su abogado. El privilegio puede ser invocado no sólo por el poseedor del privilegio que es el cliente, sino tam-bién por una persona autorizada a invocarlo en beneficio de éste, o por el abogado a quien la comunicación fue hecha si lo invoca a nombre de y para el beneficio del cliente.(2)
*786 El privilegio abogado-cliente es el más antiguo de los privilegios que emanan del derecho común. Autopistas P.R. v. A.C.T., 167 D.P.R. 361 (2006). En Inglaterra, este se reconoció aproximadamente en el 1577, durante los tiempos de la Reina Isabel I, en el caso Berd v. Lovelace, 21 Eng. Rep. 33. No obstante, sus orígenes se remontan al Derecho Romano y luego al Derecho Canónico. Al amparo de la doctrina original, este privilegio le pertenecía al abogado, no al cliente, ya que su fin no era más que preservar el honor del abogado por no tener que revelar los secretos confiados por el cliente. 3 Weinstein’s Federal Evidence 2d Sec. 503.03(1), pág. 503-11 (2011).
Desde su génesis, el privilegio abogado-cliente ha prote-gido el vínculo de confianza de esta relación fiduciaria, ya que revelar las confidencias del cliente constituye no solo un acto de traición, sino que viola el deber de lealtad del abogado. 2 Mueller, Christopher y Kirkpatrick, Laird, Federal Evidence Sec. 5:13, pág. 519 (2007). Véanse, además: 4 L.P.R.A. Ap. IX, C. 21; In re Rochet Santoro, 174 D.P.R. 123 (2008); In re Monge García, 173 D.P.R. 379 (2008).
En la actualidad, los privilegios tienen un poseedor, esto es, una persona a favor de la cual se crea el *787 privilegio. Ese titular es el que tiene el derecho a invocar el privilegio y de objetar la evidencia que se presenta en vio-lación al mismo. En la relación abogado-cliente el titular del privilegio es el cliente. 1 McCormick on Evidence Sec. 73.1(a), págs. 342-344 (2006).
Así, no solo son privilegiadas las comunicaciones del cliente al abogado, sino también las hechas del abogado al cliente en el curso del asesoramiento legal. En fin, el pri-vilegio se extiende en ambas direcciones. Chiesa Aponte, Reglas de Evidencia de Puerto Rico 2009, op. cit., pág. 151.
De igual forma, “[e]s suficiente con que el cliente razonablemente crea que con quien habla es un abogado, aunque en realidad no lo sea. Si una persona se hace pasar por abogado, sin realmente serlo, y el cliente razonablemente cree que la persona es abogado, las comunicaciones confidenciales son privilegiadas”. Chiesa Aponte, Reglas de Evidencia de Puerto Rico 2009, op. cit. Para que el privilegio opere, no es necesario que el abogado esté admitido al ejercicio de la abogacía en Puerto Rico, sino basta con que esté admitido en alguno de los estados de Estados Unidos. Id. Véase, además, Autopistas P.R. v. A.C.T., supra.
Acorde con lo expresado, el privilegio abogadocliente puede ser invocado, no solo por quien lo posee —el cliente — , sino también por una persona autorizada a invocarlo en beneficio de este o por el abogado a quien la comunicación fue hecha si lo invoca a nombre de y para beneficio del cliente. Se reconoce que el privilegio puede ser planteado por el abogado en beneficio del cliente, hasta tanto se demuestre que el abogado no está autorizado para actuar en tal carácter. Weinstein’s, supra, Sec. 503.20(3), pág. 503-63.
Además, el privilegio abogado-cliente impide al abogado divulgar una comunicación confidencial que le haga su cliente, y si el abogado divulga a un tercero la comunicación confidencial, el tercero no podrá testificar sobre ella ante objeción del cliente (poseedor del privilegio) o *788 su representante. No obstante, el abogado sí puede testifi-car sobre una conversación con una persona que no es su cliente, en cuyo caso no hay comunicación alguna prote-gida por el privilegio. En otras palabras, las manifestacio-nes que a un abogado haga una persona que no es su cliente, no son privilegiadas, pudiendo dicho abogado de-clarar en cuanto a estas. Pueblo v. Rodríguez, 66 D.P.R. 317 (1946).
En ese sentido, para que un tribunal reconozca la existencia de una comunicación privilegiada es necesario que concurran cuatro condiciones fundamentales, a saber: (1) la comunicación tiene que haberse originado en la confianza de que no sería divulgada; (2) este elemento de confiabilidad tiene que ser esencial para mantener plena y satisfactoriamente la relación entre las partes; (3) la relación debe ser tal que la comunidad considere debe ser diligentemente promovida, y (4) el perjuicio que causaría la divulgación de la comunicación debe ser mayor que el beneficio obtenido por la correcta disposición del pleito. García Negrón v. Tribunal Superior, 104 D.P.R. 727, 732 (1976).
Sin embargo, según el apartado (C) de la derogada Re-gla 25 de Evidencia, supra, nuestro ordenamiento probato-rio establece que no existe privilegio abogado-cliente si:
(1) Los servicios del abogado fueron solicitados u obtenidos para permitir o ayudar a cualquier persona a cometer o pla-near la comisión de un delito, un acto torticero o un fraude.
(2) La comunicación es pertinente a una controversia entre los herederos del cliente ya fallecido, independientemente de que las reclamaciones provengan de un testamento o de suce-sión intestada o de transacción entre vivos.
(3) La comunicación es pertinente a una controversia rela-tiva a una violación por el abogado del cliente de un deber que surja de la relación abogado-cliente.
(4) La comunicación es pertinente a una controversia rela-tiva a un documento en que intervino el abogado en calidad de notario.
*789 (5) La comunicación es pertinente a una materia de común interés para dos o más clientes del abogado, en cuyo caso un cliente no puede invocar el privilegio contra los otros dos.(3)
B. Renuncia de los privilegios
Todos los privilegios, incluyendo los de rango constitucional, son renunciables. Chiesa Aponte, Tratado de Derecho Probatorio, op. cit., págs. 173-174. Como norma general, estos tienen que ser renunciados de forma voluntaria, consciente e inteligente. Moran v. Burbine, 475 U.S. 412 (1986); Pueblo en interés menor J.A.B.C., 123 D.P.R. 551 (1989); Pueblo v. López Rodríguez, 118 D.P.R. 515 (1987). Una renuncia será voluntaria si es “realizada sin que haya mediado intimidación, coacción o violencia por parte de los funcionarios del Estado en el procedimiento que culmina en la toma de la confesión”. Pueblo v. Ruiz Bosch, 127 D.P.R. 762, 775 (1991); Pueblo en interés menor J.A.B.C., supra, pág. 561. Es decir, para que se entienda renunciado un privilegio su dueño o poseedor debe ser advertido o informado por las autoridades pertinentes de su derecho al privilegio y de la existencia del mismo.
Las Reglas 33 y 34 de las Reglas de Evidencia de 1979, recogían estatutariamente los principios esbozados. Así, la Regla 33 disponía lo siguiente:
Una persona que de otro modo tendría el privilegio de no divulgar un asunto o materia específico, o de impedir que otra persona los divulgue, no tiene tal privilegio respecto a dicho asunto o materia si el tribunal determina que esa persona, o cualquiera otra mientras era la poseedora del privilegio, se obligó con otro a no invocar el privilegio, o que sin haber sido coaccionada y con conocimiento del privilegio, divulgó cual-quier parte del asunto o materia, o permitió tal divulgación por otra persona. Esta regla no se aplicara a los privilegios [constitucionalmente reconocidos al acusado, al igual que el *790 privilegio en contra de la autoincriminación.](4) 32 L.P.R.A. Ap. IV (ed. 2001).
*791 Por su parte, la Regla 34 proveía que un Juez
[podía] admitir una comunicación de otra manera privilegiada cuando determin[ara] que la conducta del poseedor del privi-legio equival [ía] a una renuncia, independientemente de lo dispuesto en la Regla 33. 32 L.P.R.A. Ap. IV (ed. 2001).
C. Interpretación restrictiva de los privilegios
La Regla 35 de Evidencia de 1979 proveía que los privi-legios evidenciarios debían interpretarse restrictivamente “en relación a cualquier determinación sobre la existencia de un privilegio”. 32 L.P.R.A. Ap. IV (ed. 2001).
Esta Curia ha invocado en numerosas ocasiones el concepto de la interpretación restrictiva para limitar el alcance o no permitir la aplicación de un privilegio. Pueblo en interés menor L.R.R., 125 D.P.R. 78 (1989); García Negrón v. Tribunal Superior, supra; Ward v. Tribunal Superior, 101 D.P.R. 865 (1974); Lugo Ortiz v. Ferrer, 85 D.P.R. 862 (1962); Pueblo v. Matos, 83 D.P.R. 335 (1961). La interpretación restrictiva del privilegio, pudiera incli-nar la balanza contra su reconocimiento. Ahora bien, ante la ausencia de una renuncia expresa es imperativo evaluar la totalidad de las circunstancias, donde se protegen irnos derechos constitucionales.-
*792 D. Consideraciones éticas del privilegio y relación abogado-cliente: sus implicaciones con el derecho constitucional a no incriminarse
La relación de abogado y cliente debe fundamentarse en la absoluta confianza. ... [T]odo miembro del foro legal le debe a sus clientes un trato profesional caracterizado por la mayor capacidad, la más devota lealtad y la más completa honradez. El abogado debe poner todo su empeño en llevar a cabo en esa forma su gestión profesional, y no debe dejar de cumplir con su deber por temor a perder el favor judicial o por miedo a perder la estimación popular. 4 L.P.R.A. Ap. IX Art. 18.
La relación abogado-cliente es sui géneris. Es de natu-raleza fiduciaria y está basada en la honestidad, lealtad y fidelidad absoluta. Ello responde, en gran medida, a lasi-nexorables exigencias éticas muy particulares de la profe-sión legal. López de Victoria v. Rodríguez, 113 D.P.R. 265 (1982). Así, esta relación se fundamenta —en gran medi-da— en el deber de lealtad y de confidencialidad que debe todo abogado a su cliente. 4 L.P.R.A. Ap. IX, C.21.(5) Su fin es utilitario, ya que permite que una persona obtenga con-sejo legal con la confianza de que la comunicación se origina en un supuesto de confidencialidad y que la misma no será divulgada más allá de lo necesario para llevar a cabo sus fines. Emmanuelli, op. cit., pág. 214. Esta obligación conti-núa aun después de haber cesado las relaciones del abogado y cliente. In re Guzmán, 80 D.P.R. 713, 723-724 (1958).
En su obra, Etica y responsabilidad disciplinaria del abogado, el juez Sigfrido Steidel Figueroa describe con pre-cisión las implicaciones éticas de la relación abogado-cliente.
Al formalizar una relación profesional con un cliente, un *793 abogado se obliga a cumplir las prestaciones que la relación contractual genera. También se obliga a cumplir con los debe-res que el código de ética le impone, algunos de los cuales pueden concebirse como prestaciones accesorias a la presta-ción principal pactada. Esos deberes no son exigibles sólo frente al cliente inmediato del abogado durante el tiempo en que subsiste la relación contractual. Algunos son exigibles in-cluso luego de que el abogado cumple la gestión específica que el cliente le encomendó, pues no se proyectan exclusivamente en la dinámica interna entre el abogado y su representado. También tienen implicaciones frente a otros clientes, tanto si-multáneos como futuros. Así, la responsabilidad ética y disci-plinaria del abogado trasciende tanto el vínculo temporal de la relación contractual, al proyectarse aún después de que la re-lación finaliza, como la singularidad de la relación contractual con una o varias personas. En similar situación se encuentra el abogado que asume de oficio la representación legal de una persona.
Un cliente selecciona a un abogado como su representante por diversas razones: la reputación ganada por el abogado; una relación de amistad, de parentesco o de otra índole; acce-sibilidad geográfica o de costo; por recomendación; por desig-nación de oficio del tribunal (en cuyo caso no cabe hablar pro-piamente de selección por parte del cliente); o por designación del bufete contratado por el cliente; entre muchas otras razones. Indistintamente, el cliente habrá de confiar en que el abogado cumplirá diligentemente la tarea que se le ha encomendado. De este modo, subyace en esa naciente relación la expectativa del cliente de que el abogado que ha seleccio-nado honrará la confianza que le ha depositado.
Para algunos, la relación de confianza exigible a un abogado frente a un cliente no parece muy distinta de la que debe [exigirse] en otro tipo de relación profesional, como por ejem-plo, entre un médico y un paciente o entre un contador público y un cliente. No hay duda de que todas estas relaciones profe-sionales requieren una dosis significativa de confianza entre las partes involucradas. De hecho, toda relación contractual parte de un elemento mínimo de confianza —confianza en que se cumplirán las prestaciones según lo pactado, confianza en que se obrará de buena fe, etcétera. Sin embargo, distinto a otras relaciones profesionales, la relación entre un abogado y un cliente con frecuencia se opone a otros intereses, de ordi-nario adversos, a los que el cliente mira con desconfianza. De este modo, el contexto adversativo propio del sistema de dis-pensar justicia —que no está presente en la relación entre un médico y un paciente o entre un contador y un cliente— ads- *794 cribe un sitial de preeminencia al deber de honrar la confianza depositada por un cliente en un abogado. “Hacer honor a la confianza” constituye, así, la piedra angular de los deberes que el abogado debe cumplir en su relación con un cliente. Pero, ¿confianza en qué? Surgen entonces los deberes implícitos en aquél: absoluta lealtad, honradez, diligencia y competencia profesional.

El deber de lealtad hacia un cliente lleva implícito dos obli-gaciones principales del abogado: “ejercer un criterio profesio-nal independiente en defensa de los intereses del cliente” y “no divulgar los secretos y confidencias que el cliente haya compar-tido en el transcurso de su representación. Este último deber subsiste aún después de que concluye la relación abogado-cliente.

Insito en el deber de lealtad, también se encuentra el deber del abogado de mantener la secretividad de las confidencias que le hace un cliente. Este deber posibilita que el abogado ob-tenga toda la información relevante al caso de su cliente sin que éste tema que lo [expresado] a su abogado llegue sin su consen-timiento a oídos de terceros que pudieran perjudicarlo. ... (Es-colios omitidos y énfasis nuestro.) S. Steidel Figueroa, Etica y responsabilidad disciplinaria del abogado, San Juan, Pubs. JTS, 2010, págs. 173-177.
Así pues, las obligaciones que nacen de la relación abogado-cliente pueden verse desde dos perspectivas: ético-disciplinaria y probatoria-procesal. En esencia, se trata de acercamientos a intereses jurídicamente tutelados que tienen sus propios fundamentos y que operacionalmente coinciden entre sí. Steidel Figueroa, op. cit., pág. 176.
Desde la vertiente ético-disciplinaria, el abogado tiene el deber de guardar todas las confidencias que recibe de su cliente. De igual modo, desde su dimensión procesal-probatoria, “tanto el abogado como terceras personas están obligadas a respetar ese vínculo de lealtad que debe profe-sar un abogado hacia su cliente mediante el reconoci-miento de un privilegio probatorio invocable por el cliente, incluso frente a terceros”. Steidel Figueroa, op. cit., pág. 176.
Asimismo, el deber de lealtad y secreto profesional tiene tangen- *795 cia con la protección constitucional contra la autoincriminación. De ahí que se haya afirmado que el deber de secreto profesional se basa “en la necesidad de la libertad de comunicación que debe existir entre el letrado y su cliente y en la obligación de asegu-rarle a este último que sus confidencias no se[rán\ violadas; en este sentido, está unido a la garantía constitucional según la cual nadie está obligado a declarar contra sí mismo”. (Enfasis nuestro.) Steidel Figueroa, op. cit., pág. 176, citando a M.E. Azerrad, G. Alberto Florio y M.S. Azerrad, El secreto profesional y el deber de confidencialidad, 114 (Ediciones Jurídicas Cuyo, 2003).
Precisamente, es ese deber de secreto profesional y la necesidad de que las comunicaciones habidas entre el cliente y su abogado no sean divulgadas a terceros, lo que hace que la garantía constitucional a no incriminarse también esté encarnada dentro de nuestro esquema probatorio. Véanse: Reglas 23 y 24 de Evidencia de 1979 (32 L.P.R.A. Ap. IV (ed. 2001)). Ello, pues cuando un abogado divulga información confidencial sin la autorización previa de su cliente, incurre en una de las faltas éticas de mayor gravedad; particularmente en contra de los deberes de lealtad y confidencialidad que debe honrar a sus clientes. 4 L.P.R.A. Ap. IX, C.21. Más aún, si la información divulgada de forma no autorizada incrimina penalmente a su cliente, el abogado, aparte de incurrir en conducta impropia, viola el derecho a la no autoincriminación de su cliente. Cf. Nix v. Whiteside, 475 U.S. 157 (1986); In re Clavell Ruiz, 131 D.P.R. 500 (1992).
Empero, si las circunstancias particulares del caso revelan que el cliente renunció adecuadamente a su derecho a no incriminarse y a su privilegio al amparo de la Regla 25 de Evidencia, supra, el abogado no habrá incurrido en conducta impropia alguna. Véanse, además: Brewer v. Williams, 430 U.S. 387 (1977) (el Tribunal Supremo federal resolvió que la renuncia de un privilegio no solo debe ser inteligente, sino que debe demostrarse la intención de renuncia del poseedor del privilegio. En ese sentido, en relación al privilegio que emana de la Quinta En- *796 mienda de la Constitución de Estados Unidos, es fundamental avisarle adecuadamente al poseedor del pri-vilegio sobre sus derechos y no limitarse a un ritual preli-minar de métodos existentes de interrogación); Miranda v. Arizona, 384 U.S. 436 (1966), y su progenie.
Un ejemplo de la normativa esbozada lo es People v. Cassas, 84 N.Y.2d 718 (1995). En síntesis, los hechos apun-tan que James Cassas fue acusado y condenado por el ase-sinato de su esposa, Jan Cassas, al dispararle con un arma de fuego cuatro veces por detrás de la cabeza y cuello en horas de la mañana del 25 de junio de 1987. People v. Cassas, supra, pág. 721.
A raíz de estos hechos, el señor Cassas y su abogado Samuel Hirsch, acudieron a la Estación de la Policía más cercana. Una vez allí, el licenciado Hirsch se identificó como abogado e indicó que en el hogar de su cliente había ocurrido un problema, por lo que era necesaria la pronta asistencia de la policía. Ante ello, mientras el señor Cassas permaneció en el cuartel, el licenciado Hirsch acompañó a los policías a la escena del crimen y allí encontraron el cuerpo de la señora Cassas. Luego, el licenciado Hirsch regresó al cuartel donde el señor Cassas le esperaba. People v. Cassas, supra.
Una vez en el cuartel," el abogado expresó que “había llevado a su cliente para que se entregara. Entiendo que fue él quien le disparó a su esposa. Encontrarán el arma en el cuarto, la cual tendrá las huellas dactilares de mi cliente”. (Traducción nuestra.) People v. Cassas, supra, pág. 721. Consecuentemente, el señor Cassas fue arrestado y, más tarde en el día, se recuperó el arma de fuego justo en el lugar donde indicó el licenciado Hirsch. Id.
Durante el proceso judicial contra el señor Cassas, el Tribunal de Primera Instancia del Estado de Nueva York denegó una moción que presentó el imputado solicitando la supresión de las declaraciones hechas por el licenciado Hirsch a la Policía. El foro primario señaló que al momento de emitirse las referidas declaraciones el licenciado Hirsch, *797 como abogado del señor Cassas, fungía como su agente, por lo que estaba autorizado a hablar sobre la información a él confesada por el imputado producto de su relación abogado-cliente. Por lo tanto, coligió que la declaración obligaba al acusado. People v. Cassas, supra.
El Tribunal de Apelaciones del Estado de Nueva York confirmó el dictamen recurrido. Concluyó que la declara-ción en controversia, la cual fue admitida mediante el tes-timonio de un detective, constituía prueba directa sobre la culpabilidad del señor Cassas. People v. Cassas, supra.
Atendida la controversia por la Corte Suprema del es-tado de Nueva York, ese Foro revocó el dictamen del tribunal apelativo intermedio y ordenó la celebración de un nuevo juicio. Apuntaló que como norma general es harto conocido que las declaraciones de un abogado son admisi-bles contra su cliente. People v. Cassas, supra, pág. 722, citando a United States v. Margiotta, 662 F.2d 131, 142 (1981); People v. Rivera, 58 AD2d 147, 149 (1977). Sin embargo, el Tribunal añadió que este caso era distinguible. Del expediente no surge evidencia alguna que la declara-ción hecha por el licenciado Hirsch fue debidamente auto-rizada por su cliente como parte de una renuncia a su pri-vilegio abogado-cliente. “Esto es particularmente importante en casos criminales donde el acusado retiene la autoridad para tomar decisiones cruciales sobre su defensa en contra de los cargos criminales”. (Traducción nuestra.) People v. Cassas, supra, pág. 722, citando a Jones v. Barnes, 463 U.S. 745, 751 (1983).
Significativamente, y clave en la correcta disposición del caso, la declaración violaría el privilegio abogado-cliente porque no existe prueba alguna que evidencie que el acusado renunció a su privilegio. Este privilegio “existe para asegurar que quien busca consejo legal pueda confiar plena y libremente en su abogado, y se asegure que sus confidencias no serán expuestas al público o a terceras personas en su detrimento”. Más aún, en People v. White, 73 N.Y.2d 468, 478 (1989), este Tribunal resolvió que “un acusado que acepta representación legal re-tiene autoridad ... sobre ciertas decisiones fundamentales re- *798 ferentes a su caso (e.g. si se declara culpable, si renuncia al derecho a juicio por jurado, si testifica a su favor, si apela un dictamen)”.
El hecho de que un abogado es el agente de su cliente no significa que ello constituye una renuncia al privilegio abogado-cliente. Para que ello sea así, esa autorización espe-cífica debe provenir del cliente. (Citas omitidas y traducción nuestra.) People v. Cassas, supra, págs. 723-724.
En atención a ello, el más alto foro judicial de Nueva York concluyó que la alegada confesión hecha por el licen-ciado Hirsch fue erróneamente admitida en evidencia. Ello, ya que el abogado no fue autorizado por el acusado a declarar a su nombre ante los agentes del orden público ni a renunciar al privilegio abogado-cliente. People v. Cassas, supra, págs. 723-724.
E. “Quantum” de prueba en la vista preliminar y los fun-damentos para desestimación al amparo de la Regla 64(p)
Conforme nuestro ordenamiento procesal criminal y su jurisprudencia interpretativa, la vista preliminar contenida en la Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, debe celebrarse en todos los casos de delito grave. “En esencia, el propósito principal de esta vista es evitar que una persona sea sometida injustificadamente a los rigores de un proceso penal. Ello se logra mediante la exigencia de que el Estado presente alguna prueba sobre los elementos constitutivos del delito y sobre la conexión del imputado con su comisión”. Pueblo v. Rivera Vázquez, 177 D.P.R. 868, 875 (2010).
Por su parte, durante la celebración de la vista prelimi-nar el imputado de delito puede presentar prueba a su favor y contrainterrogar a los testigos presentados por el Mi-nisterio Público. De esta forma, si luego de evaluar la prueba desfilada el juez de instancia queda convencido que existe causa probable para acusar al imputado, debe auto-rizar que se presente la acusación contra este. “De lo con-trario, lo debe exonerar y ponerlo en libertad si es que es- *799 taba detenido.” Pueblo v. Rivera Vázquez, supra. Véanse, además: Pueblo v. Ríos Alonso, 149 D.P.R. 761, 766-767 (1999); Pueblo v. Rodríguez Aponte, 116 D.P.R. 653, 663 (1985).
En este sentido, reiteradamente hemos resuelto que la vista preliminar posee los rasgos de un modelo procesal híbrido que permite evaluar, tanto la validez del arresto, como las probabilidades de que la persona sea culpable del delito grave que se le imputa. Pueblo v. Rivera Vázquez, supra. No obstante, cabe recalcar que en esta etapa del procedimiento no se hace una adjudicación en los méritos sobre la culpabilidad del imputado. Véanse: Pueblo en interés menor K.J.S.R., 172 D.P.R. 490 (2007); Pueblo v. Andaluz Méndez, 143 D.P.R. 656, 662 (1997); Pueblo v. Rodríguez Aponte, supra. En ese contexto,
[e]l propósito de la vista preliminar es tratar con probabilida-des, tanto en lo referente a la comisión de un delito como en cuanto al autor de dicho delito. ... [H]ay envuelta una doble situación de probabilidades: la de que determinado delito haya sido cometido y la de que determinada persona lo haya cometido. Pueblo v. Rodríguez Aponte, supra, págs. 663-664, citando a N. Frattallone, La Vista Preliminar, 63 Rev. Der. Pur. 231, 234 (1977).
En consecuencia, la vista preliminar no involucra una adjudicación final en los méritos. Su función no es establecer la culpabilidad del acusado. Más bien, su objetivo es auscultar si, en efecto, el Estado tiene una justificación adecuada para continuar con un proceso judicial en contra del imputado. En esta etapa, la prueba no tiene que evidenciar la culpabilidad del acusado más allá de duda razonable, sino que, como mencionáramos, debe probar to-dos los elementos constitutivos del delito y conectar razonablemente al imputado con la comisión de este. Pueblo v. Rodríguez Aponte, supra.
Corolario de esta visión, el Ministerio Fiscal no está en la obligación a presentar toda la evidencia que posea. Pueblo v. Vélez Pumarejo, 113 D.P.R. 349 (1982). *800 Solo se le requiere que presente aquella prueba constitu-tiva del quantum necesario para establecer que existe causa probable sobre todos los elementos del delito y su conexión con el imputado. Pueblo v. Pillot Rentas, 169 D.P.R. 746 (2006); Pueblo v. Rodríguez Aponte, supra; Vázquez Rosado v. Tribunal Superior, 100 D.P.R. 592 (1972). En fin, la existencia de causa probable en la etapa de la vista preliminar concede la debida autorización al Ministe-rio Público para presentar la acusación de rigor.
Así, ante una determinación de causa probable para acusar, el remedio exclusivo del acusado es solicitar la desestimación del procedimiento celebrado en su contra al amparo de la Regla 64(p) de Procedimiento Criminal, supra. En esencia, esta moción permite al acusado solicitar la desestimación del pliego acusatorio, o cualquier cargo incluido en este, “cuando un juez no ha determinado causa probable u ordenado su detención para responder del delito con arreglo a la ley y a derecho”. Pueblo v. Rivera Vázquez, supra, pág. 878. Véase Pueblo v. Jiménez Cruz, 145 D.P.R. 803, 815 (1998).
Conforme la Regla 64(p) de Procedimiento Criminal, supra, esta puede ser invocada por dos fundamentos, a saber: (1) la determinación de causa probable es contraria a dere-cho porque hubo una ausencia total de prueba en la vista preliminar o (2) se infringió alguno de los requisitos o de-rechos procesales que se deben observar en la vista preliminar. “Ambos fundamentos requieren una demostra-ción clara del error que se imputa al magistrado, pues toda determinación de causa probable para acusar goza de una presunción de corrección.” Pueblo v. Rivera Vázquez, supra. Véanse, además: Pueblo v. Andaluz Méndez, supra, pág. 662; Pueblo v. Rivera Alicea, 125 D.P.R. 37, 42—43 (1989). Según el primer fundamento, debe auscultarse si en la vista preliminar hubo una situación de ausencia total de prueba. Ello no implica que la evaluación de un dictamen de causa probable constituya propiamente una apelación. Por el contrario, “[e]s sólo en el caso particular de que haya
*801 ausencia total de prueba en la vista preliminar, que se per-mite sustituir el criterio del juez que atienda la moción por el del magistrado que haya presidido la vista aludida”. Pueblo v. Rivera Vázquez, supra, págs. 878-879. Véase Vázquez Rosado v. Tribunal Superior, supra, pág. 594.
En tales circunstancias, se debe examinar la prueba de cargo y de defensa desfilada en la vista preliminar, y determi-nar si esa prueba establece la probabilidad de que esté pre-sente cada uno de los elementos del delito y la conexión del imputado con éste. Además, se debe considerar que, aunque la prueba pueda establecer la posible comisión de otro delito, sólo procede desestimar ante un caso claro de ausencia total de prueba sobre uno o varios elementos del delito imputado, o sobre la conexión de la persona con éste. (Enfasis nuestro.) Pueblo v. Rivera Vázquez, supra, pág. 879. Véase, además, Pueblo v. Rivera Alicea, supra.
Ill
En el caso que nos ocupa, el peticionario Fernández Ro-dríguez aduce que el testimonio del sargento Curbelo es inadmisible en evidencia debido a que fue obtenido en vio-lación al privilegio abogado-cliente y en detrimento de su derecho a no autoincriminarse. A consecuencia de ello, nos solicita que revoquemos la sentencia dictada por el Tribunal de Apelaciones y ordenemos la supresión del referido testimonio y el arma de fuego, municiones y cargador ocupados. Le asiste la razón, en parte.
A. Privilegio abogado-cliente del señor Fernández Rodrí-guez y la admisibilidad del testimonio del sargento Curbelo
Primeramente, no tenemos duda alguna que entre el peticionario Fernández Rodríguez y el licenciado Carbone existió una relación abogado-cliente. Los documentos con-tenidos en el expediente judicial, así como las transcripcio-nes de los testimonios del sargento Curbelo y del propio licenciado Carbone, revelan que durante el transcurso de esta relación fiduciaria el señor Fernández Rodríguez con-fió al licenciado Carbone la información relacionada con la *802 comisión de los actos delictivos imputados. En ese sentido, los requisitos esbozados en García Negrón v. Tribunal Superior, supra, pág. 732, se cumplen a cabalidad. A saber: (1) la comunicación entre el señor Fernández Rodríguez y el licenciado Carbone se originó con la expectativa de que no sería divulgada; (2) ese elemento de confidencialidad jugó un papel esencial para mantener la relación fiduciaria entre las partes; (3) la comunidad claramente considera que esta relación debe ser promovida diligentemente, y (4) el perjuicio que causó la divulgación de la comunicación es palpablemente mayor al beneficio obtenido. Consecuente-mente, la comunicación en controversia —y toda la infor-mación confiada al licenciado Curbelo— constituye mate-ria privilegiada protegida por el privilegio abogado-cliente. Véase Chiesa Aponte, Reglas de Evidencia de Puerto Rico 2009, op. cit., pág. 151.
Además, entendemos que los hechos pertinentes a la controversia de autos no presentan ninguno de los escena-rios provistos por la otrora Regla 25(C) de Evidencia, supra, para que se considere inexistente el privilegio abogado-cliente. Es decir, el caso de epígrafe no presenta una situación en donde los servicios del abogado fueron solicitados u obtenidos para ayudar a cometer o planificar la comisión de un delito. Todo lo contrario. En esta ocasión, los servicios del licenciado Carbone fueron solicitados para fungir como protector de los derechos que le asisten a toda persona que desea confesar la comisión de un crimen. De igual forma, el caso de autos no involucra una comunica-ción que: (a) esté relacionada con la muerte de un cliente del abogado ni con un pleito entre sus respectivos herede-ros; (b) sea pertinente a una violación de los deberes mu-tuos que surgen de la relación abogado-cliente; (c) sea per-tinente a una controversia relativa a un documento en que el abogado intervino en calidad de notario, o (d) sea perti-nente a una materia de común interés para dos o más per-sonas que son clientes del abogado.
En segundo lugar, entendemos que las circunstancias particulares de este caso tampoco muestran que el posee- *803 dor del privilegio abogado-cliente haya renunciado a este, según lo pautado por las Reglas 33 y 34 de Evidencia de 1979 (32 L.RR.A. Ap. IV). En otras palabras, no se deduce del expediente, como tampoco se presentó prueba alguna, que demuestre que el señor Fernández Rodríguez renunció a su privilegio abogado-cliente. Al contrario, las mociones y los recursos presentados, al igual que la prueba desfilada ante el Tribunal de Primera Instancia, demuestran que en ningún momento el señor Fernández Rodríguez divulgó la información confidencial a un tercero ajeno a la relación abogado-cliente.
Por ello, entendemos que el Tribunal de Apelaciones erró al concluir que la intención y el comportamiento del señor Fernández Rodríguez constituyó una renuncia implí-cita a su privilegio abogado-cliente. Esa línea de razona-miento no toma en consideración los antecedentes fácticos particulares del caso de marras. Nos explicamos.
El expediente judicial sostiene que al llegar al Cuartel General, el licenciado Carbone expresó que el señor Fer-nández Rodríguez no emitiría declaración alguna sobre los hechos acontecidos porque se encontraba muy nervioso, pero que posteriormente sí lo haría. Véanse: Apéndice de la Petición de certiorari, págs. 15-16; Transcripción de la Vista Preliminar de 25 y 29 de octubre de 2007, págs. 6-9, CC-2009-0622, Pieza 2. Asimismo, resulta importante pun-tualizar que en el momento preciso en que el licenciado Carbone le divulgó la información privilegiada al sargento Curbelo ya se le habían leído las advertencias al señor Fer-nández Rodríguez y este se encontraba en otro lugar, o sea, en una celda bajo la custodia de otros agentes del orden público. Véase Transcripción de la Vista Preliminar de 25 y 29 de octubre de 2007, págs. 46-47 y 49, CC-2009-0622, Pieza 2. Además, del propio testimonio del sargento Cur-belo se deduce que el señor Fernández Rodríguez no auto-rizó al licenciado Carbone a que emitiera declaración al-guna a su nombre. Véase Transcripción de la Vista Preliminar de 25 y 29 de octubre de 2007, págs. 47-52, CC-2009-0622, Pieza 2.
*804 El hecho de que durante la vista de determinación de causa para arresto la representación legal del imputado no haya objetado el testimonio del sargento Curbelo, no significa que ante las circunstancias presentes el imputado haya renunciado al privilegio abogado-cliente. Tampoco implica que el propio imputado, quien es el poseedor del privilegio, haya renunciado por no objetar una parte específica del testimonio. Si bien el privilegio abogado-cliente no tiene rango constitucional, en situaciones particulares como la presente tal privilegio se encuentra interrelacionado con el derecho constitucional a la no autoincriminación. Weinstein’s, supra, Sec. 503.03[1]; Notas, The Attorney-Client Privilege: Fixed Rules, Balancing, and Constitutional Entitlement, 91 Harv. L. Rev. 464, 480 (1977). Resultaría en una injusticia exigirle a un ciudadano conocimiento sobre materia evidenciaría y sobre la forma de ale-gar una objeción correcta, que sea oportuna y que esté fundamentada, como condición para el reconocimiento de sus derechos en aquellas instancias en que goza de una representación legal. Como sabemos, en el caso de autos el imputado contó con representación legal y, por lo tanto, sería incorrecto colegir que al no haber objetado él mismo, permitió la divulgación de información privilegiada.
Cónsono con lo anterior, resulta forzoso colegir que el se-ñor Fernández Rodríguez no renunció implícitamente a su privilegio abogado-cliente. Aquí, al igual que en People v. Cassas, supra, los actos del cliente (señor Fernández Rodrí-guez), en unión a las circunstancias particulares presenta-das, no apoyan otra conclusión. En consecuencia, el foro apelativo intermedio incidió al concluir que el testimonio del sargento Curbelo y el arma de fuego, cargador y municiones ocupadas eran admisibles en evidencia. Estos fueron obte-nidos en contra del privilegio abogado-cliente del imputado y de su derecho a no incriminarse.(6) Const. Enmda. V, EE. *805 UU., L.PR.A., Tomo 1; Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1; 32 L.P.R.A. Ap. IV, R. 23 y R. 24 (ed. 2001). Véanse, además: People v. Cassas, supra, citando a Jones v. Barnes, supra, y a People v. White, supra.
Ahora bien, lo expresado anteriormente no dispone por completo del asunto ante nuestra consideración. La supre-sión del testimonio del sargento Curbelo se limita única y exclusivamente a la parte que contempla información de naturaleza privilegiada. 32 L.P.R.A. Ap. IV, R. 7 (ed. 2001).(7) Es decir, la inadmisibilidad del testimonio del sar-gento Curbelo se circunscribe a las expresiones vertidas por este mediante las cuales narró lo divulgado por el li-cenciado Carbone en violación al privilegio abogado-cliente del señor Fernández Rodríguez. Véase Chiesa Aponte, Re-glas de Evidencia de Puerto Rico 2009, op. cit., págs. 91-93. Véanse, además: Gray v. Maryland, 523 U.S. 185 (1998); Richardson v. Marsh, 481 U.S. 200 (1987).
Por consiguiente, el sargento Curbelo podrá testificar en su día sobre cualquier información que le conste de propio y personal conocimiento, como también sobre cualquier otra información que se derive del proceso de investigación que no sea de naturaleza privilegiada.
B. Determinación de causa probable para acusar y la moción de desestimación presentada por el señor Fernández Rodrí-guez al amparo de la Regla 64(p) de Procedimiento Criminal
Conforme esbozamos en páginas anteriores, el quantum de prueba requerido en la vista preliminar que se celebra *806 al amparo de la Regla 23 de Procedimiento Criminal, supra, le exige al Ministerio Público presentar evidencia que demuestre todos los elementos constitutivos de determi-nado delito y la conexión razonable del imputado con la comisión del mismo.
Así, pues, en esta ocasión surge del expediente que el 25 de mayo de 2007, fecha en que dio comienzo la vista preli-minar, las partes estipularon la prueba siguiente: (1) el informe de balística; (2) una prueba de ADN; (3) el análisis forense de la ropa incautada al señor Fernández Rodrí-guez; (4) servilletas y marcas de sangre de uno de los occi-sos, y (5) el registro del arma de fuego y la licencia de tiro al blanco del señor Fernández Rodríguez. Véase Apéndice de la Petición de certiorari, págs. 146-147. Esta prueba esti-pulada, en unión a las declaraciones vertidas por el sar-gento Curbelo que no involucran materia privilegiada, así como los testimonios vertidos por los demás testigos pre-sentados por la Fiscalía, es suficiente en derecho y cumple con el quantum de prueba exigido en la vista preliminar. En consecuencia, el Tribunal de Apelaciones actuó correc-tamente al avalar la determinación de causa probable para acusar alcanzada por el Tribunal de Primera Instancia.
Colegimos, pues, que el foro apelativo intermedio no in-cidió al sostener la determinación del foro primario me-diante la cual se declaró no ha lugar la moción de desesti-mación presentada por el señor Fernández Rodríguez al amparo de la Regla 64(p) de Procedimiento Criminal, supra. Contrario a lo alegado por el peticionario, no hubo una ausencia total de prueba durante la celebración de la vista preliminar. Pueblo v. Rivera Vázquez, supra; Pueblo v. Andaluz Méndez, supra. En cambio, la prueba estipu-lada entre las partes y la restante prueba desfilada du-rante la vista preliminar cumplió a cabalidad con el están-dar requerido para sostener una determinación de causa probable para acusar al señor Fernández Rodríguez. Por ello, no procede que se desestimen los pliegos acusatorios presentados contra el acusado. Pueblo v. Rivera Vázquez,
*807 supra; Pueblo v. Andaluz Méndez, supra; Pueblo v. Rivera Alicea, supra; Pueblo v. Rodríguez Ríos, 136 D.P.R. 685 (1994); Vázquez Rosado v. Tribunal Superior, supra.
Asimismo, es oportuno puntualizar que no cabe duda que de la prueba admisible y presentada en la vista preli-minar se conecta al imputado con la comisión del delito de Asesinato y las infracciones a la Ley de Armas de Puerto Rico. De igual modo, de la referida prueba puede inferirse razonablemente, que la intención del señor Fernández Ro-dríguez cuando se presentó al Cuartel acompañado de su abogado fue para entregarse a las autoridades por estar relacionado con el crimen imputado.
C. Derecho a no incriminarse del señor Fernández Rodrí-guez y los deberes de lealtad y confidencialidad del licen-ciado Curbelo para con su cliente
El caso bajo examen es uno que presenta circunstancias muy peculiares. Así, los hechos ante nos exhiben las dos perspectivas descritas anteriormente sobre las obligacio-nes que nacen de la relación abogado-cliente. Es decir, la controversia medular debe ser escudriñada desde una óp-tica ético-disciplinaria y otra probatorio-procesal. Ya he-mos dispuesto de esta última, por lo que resta analizar las circunstancias y controversias presentadas según el prisma de la ética profesional.
Ciertamente, coincidimos con las expresiones del juez Steidel Figueroa. Los deberes de lealtad y secreto profesional que emanan del Canon 21 del Código de Etica Profesional, supra, y que todo abogado debe honrarle a sus clientes, tienen una relación directa con la garantía constitucional de toda persona a no incriminarse. Estos deberes toman mayor relevancia y multiplican exponencialmente las repercusiones negativas, cuando la conducta impropia desplegada por el abogado consiste en divulgar de forma no autorizada información confidencial de su cliente. Ello es así, debido a que la conducta impropia desplegada implica *808 la imposición de responsabilidad penal a su cliente. Conse-cuentemente, cuando un abogado incurre en este tipo de conducta impropia, aparte de conducirse en detrimento de su cliente y los derechos constitucionales que le cobijan, actúa en contra de los deberes éticos impuestos por el Canon 21 del Código de Ética Profesional, supra. Tal proceder es altamente censurable. 4 L.P.R.A. Ap. IX. Véanse, ade-más: 2 Mueller, Christopher y Kirkpatrick, Laird, Federal Evidence, Sec. 5:13, pág. 519 (2007); In re Rochet Santoro, supra; In re Monge Garcia, supra.
En esta ocasión, según señaláramos, surge del expe-diente judicial que el licenciado Carbone divulgó informa-ción privilegiada de su cliente sin la debida autorización. Ello constituye un quebrantamiento de los deberes de leal-tad y confidencialidad impuestos por el Canon 21 del Có-digo de Ética Profesional, supra. Consecuentemente, debe ordenársele a la Procuradora General que investigue la conducta del licenciado Carbone como representante legal del señor Fernández Rodríguez para la iniciación del pro-cedimiento disciplinario correspondiente. Véanse: In re Martínez Almodóvar, 180 D.P.R. 805 (2011); In re Pérez Riveiro, 180 D.P.R. 193 (2010).
En vista de lo anterior, advertimos que cualquier letrado que incurra en conducta de esta naturaleza y en contraven-ción a los principios que rigen el Código de Ética Profesio-nal, será objeto de severas sanciones disciplinarias.
IV
Por los fundamentos antes esbozados, se modifica la sentencia emitida por el Tribunal de Apelaciones para no admitir en evidencia las partes del testimonio del sargento Curbelo que involucran materia privilegiada. Asimismo, ordenamos la supresión del arma de fuego, cargador y mu-niciones ocupadas por ser producto de dicho testimonio. Véase esc. 6 de la Opinión.
Sin embargo, confirmamos la determinación del foro apelativo intermedio en cuanto a haber declarado “no ha *809 lugar” a la moción de desestimación presentada por el se-ñor Fernández Rodríguez al amparo de la Regla 64(p) de Procedimiento Criminal, supra. Se devuelve el caso de autos al Tribunal de Primera Instancia para la continuación de los procedimientos conforme con los pronunciamientos vertidos en esta Opinión.
Finalmente, se ordena a la Oficina de la Procuradora General a que investigue la conducta desplegada por el li-cenciado Carbone en calidad de representante legal del se-ñor Fernández Rodríguez para la iniciación del procedi-miento disciplinario correspondiente.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton disintió con una opinión escrita.

 Sobre esta determinación, el imputado presentó una solicitud de reconside-ración, la cual fue denegada mediante resolución emitida el 16 de junio de 2009. Véase Apéndice de la Petición de certiorari, pág. 181.

 En la actualidad, nuestro ordenamiento jurídico-probatorio encarna el privi-legio abogado-cliente en la Regla 503 de Evidencia, 32 L.P.R.A. Ap. VI. Esta dispone, en lo pertinente, lo siguiente:
(a) “Según usadas en esta regla, las siguientes expresiones tendrán el signifi-cado que a continuación se indica:
(1) Abogada o abogado: Persona autorizada o a quien el o la cliente razo-nablemente creyó autorizada a ejercer la profesión de la abogacía en Puerto Rico o en cualquier otra jurisdicción; incluyendo a sus asociadas, ayudantes y empleadas.
(2) Cliente: Persona natural o jurídica que, directamente o a través de representante autorizado, consulta a una abogada o a un abogado con el propósito de contratarle o de obtener servicios legales o consejo en su capacidad profesional. In-cluye a la persona incapaz que consulta a una abogada o a un abogado o cuyo tutor, tutora o encargada hace tal gestión con la abogada o el abogado a nombre de la persona incapaz.
(3) Representante autorizado: Persona facultada para obtener servicios le-gales o actuar a base de consejo legal ofrecido, en representación de la que es cliente. *786 Incluye a una persona que, con el propósito de que se brinde representación legal a quien es cliente, hace o recibe una comunicación confidencial mientras actúa dentro del alcance de su empleo con el o la cliente.
(4) Comunicación confidencial: Aquélla habida entre una abogada o un abogado y su cliente en relación con alguna gestión profesional, basada en la con-fianza de que no será divulgada a terceras personas, salvo a aquéllas que sea nece-sario para llevar a efecto los propósitos de la comunicación.
(b) Sujeto a lo dispuesto en esta regla, el o la cliente —sea o no parte en el pleito o acción— tiene el privilegio de rehusar revelar, y de impedir que otra persona revele, una comunicación confidencial entre ella y su abogado. El privilegio puede ser invo-cado no sólo por quien lo posee —que es la persona cliente— sino también por una persona autorizada a invocarlo en beneficio de ésta, o por la abogada o el abogado a quien la comunicación fue hecha si lo invoca a nombre de y para beneficio del que es cliente.”
Como bien se deduce del texto citado, la nueva Regla 503 de Evidencia de 2009 comparte un lenguaje similar en naturaleza a aquel esbozado por la derogada Regla 25 de Evidencia de 1979 (32 L.P.R.A. Ap. IV (ed. 2001)). Con excepción de la defini-ción del término Representante Autorizado, al igual que otros cambios menores, po-demos interpretar ambas reglas de igual forma.

 Luego de la vigencia de las nuevas Reglas de Evidencia de 2009, las excep-ciones al privilegio abogado-cliente se encuentran contenidas en la Regla 503(C), 32 L.P.R.A. Ap. VI.

 Hoy la renuncia al privilegio abogado-cliente está reglamentado en las Re-glas 505 y 515 de Evidencia de 2009 (32 L.RR.A. Ap. VI). La Regla 505 de Evidencia, supra, dice como sigue:
“(A) Aplicabilidad de esta regla: Las disposiciones de esta regla aplican a comu-nicaciones o información protegida por el privilegio abogada o abogado-cliente, con-tadora o contador público autorizado-cliente o por el privilegio para el producto del trabajo, según se definen dichos términos a continuación:
(1) Privilegio abogada o abogado-cliente o contadora o contador público autorizado-cliente: Significa la protección provista a comunicaciones confidenciales entre abogada o abogado y cliente o contadora o contador público autorizado y cliente de conformidad con el Derecho aplicable.
(2) Privilegio para el producto del trabajo: Significa la protección provista a información que es el producto del trabajo de una parte o de la persona que es abogada, consultora, fiadora, aseguradora o agente de dicha parte, preparada u ob-tenida en anticipación de, o como parte de una investigación o procedimiento civil, administrativo o penal.
“(B) Renuncia voluntaria: La divulgación voluntaria de una información prote-gida por el privilegio abogada o abogado-cliente, contadora o contador público auto-rizado-cliente o el privilegio para el producto del trabajo constituye una renuncia a estos privilegios, la cual no se extiende a una comunicación no divulgada o a infor-mación sobre la misma materia. Esta regla no aplica si la comunicación no divulgada o los datos en cuestión deben ser considerados para la más cabal comprensión de la información divulgada.
“(C) Renuncia involuntaria: La divulgación de una comunicación o información protegida por el privilegio abogada o abogado-cliente, contadora o contador público autorizado-cliente o el privilegio para el producto del trabajo, no se considerará una renuncia al privilegio si se cumple con todos los requisitos siguientes:
(1) si fue realizada por inadvertencia;
(2) como parte del procedimiento judicial o administrativo en el cual se invoca la renuncia;
(3) quien posee el privilegio tomó medidas de precaución razonables para evitar la divulgación, y
(4) una vez el poseedor o la poseedora del privilegio conoció o debió conocer de la divulgación, con razonable prontitud tomó medidas para rectificar el error.
“(D) Efectos de una renuncia mediante estipulación: Un acuerdo entre las partes en un litigio en relación con el efecto que tendrá la divulgación de una información o comunicación protegida por el privilegio abogada o abogado-cliente, contadora o con-tador público autorizado-cliente o el privilegio para el producto del trabajo, sólo ten-drá efecto vinculante entre las partes en el litigio, excepto si el acuerdo de las partes es incorporado en una orden del Tribunal.
“(E) Órdenes Judiciales: Una orden emitida como parte de un procedimiento judicial en un Tribunal del Estado Libre Asociado de Puerto Rico, y la cual dispone que el privilegio abogada o abogado-cliente, el privilegio contadora o contador público autorizado-cliente o el privilegio para el producto del trabajo no debe considerarse renunciado en virtud de una divulgación de información efectuada en dicho procedi-miento judicial, obliga a todas las personas o entidades en todos los procedimientos judiciales o administrativos ante el Estado Libre Asociado de Puerto Rico, indepen-dientemente de que dichas personas o entidades hayan sido parte en el procedi-miento judicial, si: (1) la orden incorpora el acuerdo de las partes ante el tribunal, o (2) en caso de surgir controversia entre las partes respecto a si hubo una renuncia alprivilegio como resultado de una divulgación, la orden determina que no hubo tal renuncia al privilegio en cuestión.”
*791 Por otro lado, la Regla 517 de Evidencia, 32 L.P.R.A. Ap. VI, dispone lo si-guiente:
“(a) Renuncia expresa: Una persona, que de otro modo tendría el privilegio de no divulgar un asunto o materia específico, o de impedir que otra los divulgue, no tiene tal privilegio respecto a dicho asunto o materia si el Tribunal determina que: (1) esa persona, o cualquiera otra mientras era la poseedora del privilegio, se obligó con otra a no invocar el privilegio, o (2) que sin haber sido coaccionada y con conoci-miento del privilegio, divulgó cualquier parte del asunto o materia, o permitió tal divulgación por otra persona.
(b) Renuncia implícita: La jueza o el juez que preside un caso podrá admitir una comunicación de otra manera privilegiada cuando determine que la conducta de quien posee el privilegio equivale a una renuncia, independientemente de lo dis-puesto en el inciso (a) de esta regla.
(c) Esta regla no se aplicará a los privilegios establecidos en las Reglas 501, 502 y 512 ....”

 En lo pertinente, el Canon 21 del Código de Ética Profesional indica como sigue:
“El abogado tiene para con su cliente un deber de lealtad completa. La obliga-ción de representar a un cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. ... Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste.” 4 L.P.R.A. Ap. IX.

 Aclaramos, sin embargo, que la supresión de la evidencia ocupada en el caso de marras (arma de fuego, cargador y municiones) se decreta conforme a la norma- *805 tiva sobre el privilegio abogado-cliente y la garantía constitucional a la no autoincriminación. Ello, claro está, no es óbice alguno para que el Estado presente prueba separada e independiente a la actuación ilegal que sostenga la admisibilidad de dicha evidencia incautada. Véanse: Murray v. United States, 487 U.S. 533 (1988); Silverthorne Lumber Co. v. U.S., 251 U.S. 385 (1920). Véase, además, E.L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1991, Vol. 1, págs. 321-325.

 Hoy la Regla 107 de Evidencia, 32 L.RR.A. Ap. VI, dispone lo siguiente:

“Regla 107. Admisibilidad Limitada

“Cuando determinada evidencia sea admisible en cuanto a una parte o para un propósito, y sea inadmisible en cuanto a otra parte o para otro propósito, el tribunal, previa solicitud al efecto, limitará la admisibilidad de esa evidencia a su alcance apropiado e instruirá inmediatamente sobre ello al Jurado, de haberlo.”